Allen, P.
The prisoner was indicted for stealing a bank note for the payment of twenty dollars, the property of Green Gore. The first count charges the stealing of a bank note for the payment of twenty dollars, without further description. The second count charges the stealing of a bank note on the *758 Bank of the Valley of Virginia, issued at Winchester in Virginia, dated the-day of July 1853, for the 1 payment of twenty dollars. On the trial the prisoner excepted to three instructions to the jury, given at the instance of the commonwealth’s attorney.
By the first the court instructed the jury that if they believed from the evidence, that Gore lost a bank note of the value of twenty dollars, and that the same was afterwards found in the possession of ithe prisoner, that then they ought to find him guilty, unless his possession of the stolen note is explained , by testimony.
There is no statement of the facts which the evidence offered proved or tended to prove. But as the instructions were given, it must be taken- that they were pertinent to the facts proved or which the evidence tended to prove. And if they do not propound the law correctly, the prisoner may avail himself of the error if prejudicial to him.
To constitute larceny of the kind set out in the indictment, there must be a taking animo furandi, and against the will of the owner. At one time it was supposed that if the finder of goods converts them to his own use with a full knowledge of the owner, it is not larceny, there being no trespass committed in obtaining possession. Lord Coke, 3 Inst. 108, says, if one lose his goods and another finds them, though he convert them animo furandi to his own use, yet it is no larceny, for the first taking is -lawful. So he says, if one find treasuretrove or waif, or stray and convert ■ them ut supra, it is no larceny, both in respect of the finding, and also for that dominus rerum non apparet, ideo cujus sxint incertum est. To the same effect is 1 Hale P. C. 506.
The precise effect of these propositions of Coke and Hale was considered in the case of Regina v. Thurborn, 5 British Crown Cas. 387; and it was there determined *759 that if lost goods are taken originally animo furandi, that is with the intent not to take a partial or temporary possession, but to usurp the entire dominion over them, but under such circumstances as to warrant the jury in finding that at the time of the appropriation the prisoner really believed the owner could neither find the chattel or be found himself, such appropriation is not larceny. But that lost goods which the taker justly believes to have been lost, may be taken and converted so as to constitute the crime of larceny, when the party finding may be presumed to know the owner of them, or there is any mark upon them, presumably known by him, by which the owner can be ascertained. This case was reviewed and approved in the subsequent case of Regina v. Preston, 3 British Crown Cas. 357. In the last case it was held that where a bank note is lost, and is found by a person who appropriates it to his own use, the jury are not to be directed to consider at what time the prisoner after taking it into his possession, resolved to appropriate it to his own use, but whether at the time he took possession of it, he knew or had the means of knowing who the owner was, and took possession of it with intent to steal it. If the original possession of it was an innocent one, no subsequent change of his mind, or resolution to appropriate it to his own use would amount to a larceny.
From these decisions it appears, says the annotator, 2 Waterman’s Archbold 388, that a taking by finding in larceny may be classed under three heads: “ 1st. Where upon the finding there is no intention to appropriate the thing found to his own use, but on the contrary the finder intends to restore it to the owner if he be found, but afterwards he disposes of it to his own use either before or even after he knows who the owner is, this is not larceny, because there was no animus furandi at the time of the taking. 2d. Where *760 the party finds goods that have been actually lost, or reasonably supposed by him to have been lost, and • appropriates them with intent to take entire dominion over them, really believing then that the owner cannot be found, and he afterwards dispose of them to his own use, either before or even after he knows who the owner is, it is not larceny, because the taking, though not exactly innocent, was not punishable, and could not be made the subject of an action of trespass. 3d. Where goods lost or supposed to be lost as aforesaid, are found and appropriated with the like intent, the party at the same time knowing or reasonably believing that the owner can be found, this is larceny, whether the finder afterwards convert them to his own use or not.” Under these rules it is not enough that the party has general means by the use of proper diligence of discovering the owner. He must know the owner at the time of the finding, or the goods must have some mark about them understood by him or presumably known by him, by which the owner can be ascertained.
Whether goods were actually lost, whether appropriated by the finder lucri causa, with intent to take entire dominion over them at the time, whether at the time he so acquires possession he knew the owner, or by some mark about them presumably known by him, the owner could be ascertained, are questions entirely for the jury.
In the application of these rules the judge, in the case first referred to, remarks that “ questions of some nicety may arise, but it will generally be ascertained whether the person accused had reasonable belief that the owner could be found, by evidence of his previous acquaintance with the ownership of the chattel, the place where it is found or the nature of the marks on it.”
From this it appears that the mere possession of *761 goods which had been actually lost does not furnish any conclusive or prima, facie proof of guilt: of itself it does not raise the suspicion of guilt.
The most honest man may be found in possession of a chattel proved to have been actually lost, but holding it with the intention of restoring it to the owner; and yet according to the terms of this instruction, the mere possession under such circumstances raises the presumption of guilt, unless he can explain by testimony how his possession was acquired.
A man finding a chattel actually lost, may instantly' take possession thereof animo famuli, that is, with the. intent to usurp the entire dominion over it, and in pursuance thereof does convert it to his own use.. Such conduct in a moral aspect of the transaction may be as dishonest as to steal it, for although he may not know the owner, or there be nothing in the circumstances attending the place where it is found, or the marks thereon, to indicate the true owner, yet he must be conscious that there was an owner, and he should use all proper diligence to trace him out. Yet as the property was in fact lost and the owner unknown, and no marks existing to indicate who he is, such a taking animo fwrandi and conversion is not larceny, because there was no trespass in the taking, as the possession acquired could not be said to be against the will of the owner under the reason of the rule given by Lord Coke, quia dominus rerum non apparet ideo cujus sunt incertum est.
The instruction under consideration dispenses with all proof of the circumstances under which possession of goods which had been lost was acquired, the fact of ownership known to the finder at the time or indicated by circumstances attending the finding, or by marks on the property, and lays down the law to be that proof of loss by the owner and possession in a third person, whether the° finder or not, amounts to *762 proof of guilt unless the possession is explained. The instruction furthermore holds that those circumstances amount to guilt without reference to the question of intent, and in fact takes from the jury the consideration of the question, with what intent the possession was taken, the intent to steal laying at the foundation of the charge of larceny, and being a question entirely for the jury. The instruction furthermore assumes in the last clause that the note was stolen; thus passing upon the effect of the testimony instead of leaving it to be weighed by the j ury. In all these particulars the instruction was erroneous, to the prejudice of the prisoner.
The second instruction whether strictly right or wrong, depending on the facts in evidence, was immaterial. If the prisoner supposed there was a variance between the note alleged to have been stolen and the note described in the second count, he should have moved to have excluded it as evidence under that count, or to have asked for an instruction applicable to that count. But there being one count to which the objection did not apply, and the instruction as asked for and given applying to both counts, the prisoner could not have been prejudiced by it.
I think the court erred in the first instruction, and for that error the judgment should be reversed, the verdict set aside, and the cause remanded for a new trial.
The other judges concurred in the opinion of Allen, P.
Judgment reversed.