Allen, P.
In Hunt's Case, 13 Gratt. 757, the opinion was expressed that under particular circumstances, goods actually lost might be the subject of larceny. Such was the doctrine established in the cases of Regina v. Thurborn, 5 British Crown Cas. 387; and Regina v. Preston, 6 Id. 353. The cases on the subject *636 are reviewed in a note upon the first and leading case* before cited, in 2 Lead. Crim. Cas. 31. f It is there shown that according to the whole currept of modern authority, as well in this country as in England, with perhaps the exception of one case decided in Tennessee, Porter v. The State, Martin & Yerger 226, lost property may be the subject of larceny; and that if a taking and fraudulent intent coexist with a knowledge of the owner, the crime is complete. The correctness of this general proposition has been Questioned by the prisoner’s counsel, in the argument here, who has insisted that the cases in which it is supposed the rule was established, were cases in which the property had been merely mislaid, where the constructive possession remained with the owner, and not to cases where the property had been actually lost by the owner; as where property was left by mistake in the prisoner’s store, and he concealed and denied all knowledge of' it; or where a servant found a roll of bank notes in a passage of her master’s house, and did not inform her master, but denied she had the money; or where a coachman found a box in his coach, which he must have known belonged to a passenger whom he had carried; in these and other cases of a like character cited in 2 Lead. Crim. Cas. 34, the property cannot be said to be lost. For as was said by Parke, B. in Regina v. Thurborn, “ Perhaps these cases might be classed amongst those in which the taker is not justified in concluding that the goods were lost, because there is little doubt he must have believed that the owner would know where to find them again, and he had no pretence to consider them abandoned or derelict.”
In such case, where the owner knows where the property is, and could recover the actual possession when he desired it, if it had not been removed by the thief, the property is not lost; and not being abandoned or derelict the owner has still the constructive *637 possession, as much so as of his horse feeding in the public highway. And so where goods are actually lost by the owner, his property is not divested; and such property draws to it the constructive possession. If in such case the original taking was felonious, with intent to take entire dominion over them at the time, and the finder at the time of taking either know the owner, or from the place where the property is found, or evidence of his previous acquaintance with the ownership of it, or the nature of the marks on it, have the means of ascertaining the owner, or have reason to believe he can be found, the taking under such circumstances with such intent and knowledge is tortious. “Such possession (the judge observes in Ranson v. The State, 22 Conn. R. 153), being tortious, the taking by which it was acquired is not a lawful taking, and therefore trespass may be maintained by the owner against the taker.”
But although lost property may thus be the subject of larceny, the cases referred to show that if there are no marks on the propei'ty, or other circumstances indicating the owner as aforesaid, the appropriation to the finder’s use does not amount to larceny.
In the case of Thurborn, the accused found a note which had been accidentally dropped on the high road. There was no name or mark on it indicating who was the owner, nor were there any circumstances attending the finding which would enable him to discover to whom the note belonged when he picked it up; nor had he any reason to believe that the owner knew where to find it again. But he meant to appropriate it when he picked it up. The day after, and before he had disposed of it, he was informed that the prosecutor was the owner, and had dropped it accidentally. He then changed it, and appropriated the money taken, to his own use. The jury found that he had reason to believe and did believe it to be prosecutor’s property *638 before he thus changed the note. On these facts the court held that the first taking did not amount to larceny, because the note was really lost, and there was no mark on it, or other circumstance to indicate then who was the owner, or that he might be found, nor any evidence to rebut the presumption that would arise from the finding of the note as proved, that he believed the owner could not be found, and therefore the original taking was not felonious. And although he took the note with the intention of appropriating it to his own use when he picked it up, yet the possession was lawful, the original taking was not punishable, and the subsequent conversion, though he then knew the owner, was not a trespass.
In the case of the Queen v. Dixon, 7 Cox C. C. 35, the accused found a purse of money in a public place, but which had no mark on it by which its owner could be known; the jury found that the prisoner then believed that the owner could be traced, yet it was decided not to amount to larceny.
In the case of Manson v. The State, 22 Conn. R. 153, a pocket book and money were lost on the public highway near an inn, and within two hours the property was found by the accused at the place where lost. About the time the property was so found the owner gave notice of his loss at the inn, and publicly offered a reward for its restoration. There was no mark upon the property indicating who the owner was, nor any other evidence tending to prove that the accused, at the time of the finding, knew or had the means of knowing the owner. The accused used no means of enquiry or otherwise, to ascertain who was the owner, but concealed the fact that he had found it, and converted it to his own use.
On these facts the court instructed the jury, that if the accused, at the time he found the property, knew, or had the means of knowing the owner, and did not *639 restore it to him, but converted it to his own use, he was guilty of larceny. This was held to be a misdirection, because the conviction by the charge was made to depend on the question, whether, with a knowledge or the means of knowledge as to the owner, the accused converted the goods to his own use, after he first took them; and not upon the question, whether, at the time of such taking, he intended so to convert them. The subsequent conversion was evidence of the intention with which they were first taken, but did not of itself make that taking felonious.
It remains to apply these rules as illustrated by the facts of some of the leading cases, to the present case. The indictment charges the prisoner with having on the 19th of November 1856, stolen two bank notes of fifty dollars each, and two other bank notes of ten dollars each, the property of Alfred Grwathmey.
The jury found him guilty, and ascertained the term of his confinement in the penitentiary at twelve months. The prisoner thereupon moved the court to set the verdict aside, upon the ground that it was contrary to the law and evidence, and to grant him a new trial. The motion was overruled; to which decision the prisoner excepted; and on his motion, the court certified the facts proved on the trial. The facts were few, and are set forth with much precision in the bill of exceptions. They prove that the pocket book with the bank notes it contained were actually lost. The owner had sent a boy with his coat to a store to have it repaired, forgetting that his pocket book was in the pocket. The pocket book was dropped out and lost between the office of the owner and the store, about three squares off, in the city of Richmond. It was further proved that the owner, remembering he had left his pocket book in the coat, went in pursuit of the boy, and overtook him as he was entering the store, and it was then discovered that the pocket book *640 had been dropped out. It was further proved that the prisoner was seen to pick up something about sixty yards from the office of the owner, and on the way between said office and the store aforesaid, on the morning of the 19th of November, about ten o’clock; what it was, the witness could not say, but he thought it was a pocket book. The accused was arrested about 8 o’clock in the evening of the same day, and while on his way to prison he denied having the money and all knowledge of it. After he was taken to the watch-house and an examination of his person made, two fifty and two ten dollar notes in a little purse were found secreted in the prisoner’s cell. After the money was found he was asked what he had done with the pocket book, the other ten dollar note, and the papers that were in the pocket book; to which the prisoner replied, that that was all the money he had found; that the pocket book and papers were with his wife; and if the officer would ask his wife for them, she would give them to him. That the officer went to the house of the prisoner’s wife, who did not give him any pocket book, but gave him two papers, which, to the best of the witnesses’ recollection, were receipts for some small sums which had been paid; but to whom they were executed, or by whom or for what sums, the witness did not recollect.
There is no fact proved showing that the prisoner, at the time of the finding, knew the owner, or had the means of knowing him, or had reason to believe that he might be found. Nor can such fact be inferred with any reasonable degree of certainty, from any of the facts actually proved. It was not proved that there was any name or mark on the pocket book, or other circumstance to indicate then who was the owner. The interval between the loss of the pocket book and the finding was brief; as it was about ten o’clock in the morning when the coat was sent to the store, the, *641 owner overtook the boy with the coat as he was entering the store, and discovered that the pocket book had been dropped out and lost, and the-prisoner about the same hour in the day was seen to pick up something on the way between the office and the store.
But these facts do not warrant the inference that the prisoner saw the pocket book drop from the pocket of the coat. The place was in the public street of the city of Kichmond; and the fact that the pocket book must have been accidentally dropped and lost but a few minutes before it was found, does not indicate to the finder who was the owner. It was not proved by the witness who saw him pick it up, that he saw it drop from the coat the boy was carrying, and there is no more reason to infer that it was seen to drop from the coat by the prisoner than by the witness who saw him pick up something which he thought was a pocket book. It is not shown that there was any mark or name on the pocket book to point out the owner; he was examined and does not prove the fact to be so. The papers delivered to the officer by the prisoner’s wife are not connected with the prisoner or the pocket book, by any fact proved in the cause; and if they were, it does not appear to whom or by whom the papers were executed.
We have seen from the authorities, that where there are no indicia by which the owner can be found, the appropriation to the finder’s use does not amount to larceny; for as it has been held the finder of a chattel actually lost is not bouud to take any means to discover the owner; he must know him immediately from marks about the property or otherwise. Of this essential fact to constitute larceny in such case, there is no direct proof, nor can it be inferred with reasonable certainty from the facts proved; the probabilities are against such inference.
The present case is weaker in some respects than *642 the case of Regina v. Thurborn. There the prisoner meant to appropriate the note found to his own use when he picked it up, and before he had disposed of it he was informed who the owner was, and that he had dropped the note accidentally. Here there is no fact to show that the original taking was not innocent as well as legal. The time when the intention was formed to assume entire dominion over the property, is left to inference. Nor does it appear that when he formed such intention, he had any knowledge of the owner. As, however, for the purpose of arriving at the intention with which the possession was first taken, evidence of the conduct of the prisoner and the circumstances, preceding, attending and following the -taking would be competent, it is unnecessary to en-quire whether, if that were the sole question in this case, the facts proved would establish an original taking animo furandi. There being nothing to indicate the owner at the time, and the property being actually lost, the accused had a legal right to take it. The possession so acquired could not be said to be against-the will of any individual; for being lost and having no knowledge of the owner, or means of knowing to whom it belpnged at the time of taking, it'was uncertain whether any owner would appear. The taking did not amount to a trespass, and so no larceny could have been committed.: If these views are correct, the facts proved did not/make out the larceny charged, and the verdict should have been set aside, and a new trial granted. (/
The other judges/concurred in the opinion of Allen, P. /
Judgment reversed.