MONCURE, P.
This is a writ of error to a judgment of the Court of Hustings of the city of Richmond, convicting the plaintiff in error, Philip Clarke, of burglary, and sentencing him therefor to confinement in the penitentiary for the term of five years. There were two counts in the indictment, in one of which the dwelling house is described as that of Joseph Dabney, and in the other as that of Danny Straus; and in each of them the accused was charged with having ^broken and entered the said house, not only with intent to commit a larceny therein, but also with having actually committed such larceny, to wit: of one trunk and its contents of certain specific values respectively as set out, and all of the aggregate value of eighty-five dollars and eighty-five cents, of the goods and chattels of the said Joseph Dabney, in the said dwelling house then and there being found. The accused, upon his arraignment, plead not guilty to the indictment; and being put upon his trial, the jury found him guilty, and ascertained ’ his term of confinement in the penitentiary at five years. Thereupon the accused moved the court to set aside the verdict and grant him a new trial; which motion was overruled by the court: and judgment was pronounced against him according to the verdict.
During the progress of the trial, the prisoner excepted to two decisions of the court given against him, and tendered two bills of exceptions, which were accordingly signed and sealed by the court, and made a part of the record.
The first bill of exceptions states, that on the trial of the cause it was proved, on the part of the commonwealth, that Joseph Dabney and Edward Henderson jointly rented and occupied a room in the house of one Dannie Stra us, in the city of Richmond; that each of them had and kept a. key to the door of the said room; that the prisoner, Clarke, at the same time rented and occupied an adjoining room up stairs in the same house, the doors of the two rooms opening near each other on the same porch, and Dabney and Henderson and Clarke frequently interchanged visits from one room to the other; that on the night of the 11th day of March 1874 Dabney locked his door and took his key with him, and in going to church met *Henderson, who said he was going back to their room, and would join him (Dabney) at church soon; that the windows were nailed, and Dabney left in the room a trunk, which contained nearly all his clothes, and several other articles enumerated in the indictment and exhibited in court; that when he returned to his room he found the door locked and the windows nailed as he had left them, and there was no appearance of any breaking of the premises in doors, windows or elsewhere, but his trunk and its contents were missing, and after search for it the next day, in the evening, he found it at a room (in another house) which was rented by Clarke that day ; that Clarke disappeared from the city of Richmond, and, when he was afterwards arrested, he confessed, freely and voluntarily, after but little hesitation, that Henderson led him into the act ; agreed with him to take Dabney’s trunk ; that they went to the room together and unlocked the door, and they entered and took the trunk with intent to take it away and steal it, and it was removed to a place whence it was taken to Clarke’s room, the place where it was found, the said Henderson having assisted him in the removal of the trunk from the room into the yard, and put it upon prisoner’s shoulder, who carried it off. On the part of the defence it was proved that the trunk and all its contents would not bring twenty-five dollars at auction. This was all the material evidence in the case. Whereupon the prisoner moved the court to instruct the jury as follows, to wit:
“If the jury believe from the evidence that Edward Henderson was a renter, in part, of the room charged to have been broken and entered, occupied by him and Joseph Dabney in common, and that the said Henderson, as one of the legal tenants of that room, had one key and Dabney another key to the same Moor thereof, and that he, Henderson, voluntarily opened the door of the room, in the exercise of his right as tenant to open the door, then there was no breaking of the same; and to constitute burglary there must be a breaking as well as an entering with the intent charged in the indictment.”
Which instruction the court refused to give as offered, but gave with an addition in these words: “But if the jury believe that the prisoner and Henderson agreed together that Henderson should open the door with his key, for the purpose and with the intent of stealing the property alleged to be stolen in the indictment; and that *614 Henderson, the prisoner, being present and consenting, did so open the door in the. night time; and that in pursuance of said agreement they entered the room and stole the said property, then the prisoner is guilty of burglary. ’ ’ To. which ruling of the court the prisoner excepted.
The second bill of exceptions was to the decision of the court overruling the motion of the prisoner to set aside the verdict of the jury as contrary to the law and evidence, and grant him a new trial.
To the judgment pronounced against the prisoner as aforesaid, he applied to a judge of this court for a writ of error; which was accordingly awarded.
Burglary is defined to be, a breaking and entering of the mansion-house of another in the night, with intent to commit some felony within the same, whether such felonious intent be executed or not. 1 Russell on Crimes, 785.
' Each of the facts constituting this definition must be proved by the prosecutor, in order to sustain the charge of burglary.
In this case, there was ho doubt or difficulty in regard to any of these facts save one, and that was in regard to the: breaking ; whether there was a sufficient ^breaking to constitute burglary within the meaning and definition of that offence. That is the only question arising in this case; and that question is presented by each of the two bills of exceptions taken in the case.
There are two kinds of breaking within the meaning of the said definition; one an actual breaking, and the other . a breaking by construction of law.
It is not pretended that there was an actual breaking in this case; and therefore it is needless to inquire what will and what will not constitute an actual breaking in the meaning of the law. If there was any breaking within such meaning in this case, it was only a breaking by construction of law.
Was there a breaking in this case by construction of law?
Such a breaking is not by violence, which, more or less, is supposed to be embraced in every actual breaking; but is, “where an entrance is obtained' by threats, fraud or conspiracy.” 1 Russell on Crimes, 792.
That writer gives instances of a constructive breaking by each of these three modes; as,
1st. By threats. Where, in consequence of violence commenced or threatened in order to obtain entrance to a house, the owner, either from apprehension of the violence, or in order to repel it, opens the door and the thief enters, such entry will amount to breaking in law; for which some have given as a reason, that the opening of the door by the owner being occasioned by the felonious attempt of the thief, is as much imputable to him as if it had been actually done by his own hands. And in a late case, where the evidence was that the family within the house were forced by threats and intimidation to let in the offenders, Thompson, B., told the jury that although the *door was, literally, opened b3r one of the family, yet if such opening proceeded from the intimidations of those who were without, and from the force that had been used, knocking at and breaking the windows, calling out and insisting on the door being opened, and firing of guns; if, under these circumstances, the persons within were induced to open the door, it was as much a breaking by those who made use of such intimidations to prevail upon them so to open it, as if they had actually burst open the door. Id. 792, 793.
2dly. By fraud'. Where an act is done in fraudem legis, the law gives no benefit thereof to the party. Thus, if thieves having an intent to rob, raise hue and cry and bring the constable, to whom the owner opens the door, and they, when they come in, bind the constable and rob the owner, it is burglary. And upon the same principle, the getting possession of a dwelling house by a judgment against the'casual ejector, obtained by false affidavits, without any color of title, and then rifling the house, -was ruled to be within the statute against breaking the house and stealing the goods therein. So, if a man go to a house under pretence of having a search warrant, or of being authorized to make a distress, and by these means obtain admittance, it is, if done in the night time, a sufficient breaking and entering to constitute burglary. If admission to a house be gained, by fraud, not carried on under the cloak of legal process, as by pretence of business, it will also amount to a breaking by the construction of law.” As “where thieves came to a house in the night time with intent to commit a larceny, and knocked at the door, pretending to have business with the owner, and being by such means let in, robbed him; thejr were held guilty of burglary. And so where some persons took lodgings in a house, and *afterwards, at night, while the people were at prayers, robbed them; and it was considered that the entrance into the house, being gained by fraud, with an intent to rob, the offence was burglarjr. For the law will not endure to have its justice defrauded by such evasions. A case is also reported where the entrance to the house was gained by deluding a boy who had the care of it. It appeared upon the evidence that the prisoner was acquainted with the house, and knew that the family were in the country; and that upon meeting with the boy who kept the key, she desired him to go with her to the house; and by way of inducement, promised him a pot of ale. The boy accordingly went with her, opened the door and let her in; upon which she sent him for the pot of ale, and when he was gone robbed the house and went away. And this being in the night time, it was adjudged that the prisoner was clearly guilty of burglary. Id. 793, 794.
3dly. By conspiracy. ‘ ‘Thus where a servant conspired with a thief to let him into his master’s house to commit a robbery, *615 and in consequence of such agreement, opened the door or window in the night time and let him in; this, according to the better opinion, was considered to be burglary in both the thief and the servant; and this doctrine is confirmed by a subsequent decision. Two men were indicted for burglary, and upon the evidence it appeared that one of them was a servant in the house where the offence was committed; that in the night time he opened the street door, let in the other prisoner, and showed him the sideboard, from whence the other prisoner took the plate; that he then opened the door and let the other prisoner out; did not go out with him, but went to bed: and upon these facts being found specially, all the judges were of opinion that both the prisoners *were guilty of burglary, and they were accordingly executed.” Id. 794.
If the case now under consideration be a case of constructive breaking, it must come under one of the three heads into which that subject is divided by Russell as above set forth. It cannot come under the first or the second, as the entrance was certainly not obtained by threats or fraud. If it comes under any of them, it can only be the third, and on the ground that the entrance was obtained by a conspiracy. Was it obtained by a conspiracy, so as to be constructive breaking within the meaning of the law in regard to burglary?
The conspiracy, if any, was between the prisoner Clarke and Henderson, who, with Dabney, jointly rented and occupied a room in the house of Fannie Straus, in which room was the trunk of Dabney, which, with its contents, was charged to have been stolen. If there were any such conspiracy what was its object? Could it have been to break and enter the room of which Henderson and Dabney were joint tenants and occupants, of which each kept a key, and which, of course, each had, at all times, either by day or by night a right to enter at pleasure? or must it not have been only to steal the trunk of Dabney and its contents, which were in the room, and which were actually stolen, as charged in the indictment? They had no occasion to form a conspiracy to break and enter the room. They had a ready and a lawful mode of entering that through the door, which Henderson could at any time unlock. Dab-ney and Henderson and Clarke had rooms in the same house, the doors of the two rooms opening near each other on the same porch, and they frequently interchanged visits from one room to the other. Suppose Clarke had visited *Henderson and Dabney’s room in the latter’s absence, and in the night time, and that Clarke and Henderson had then agreed to steal Dabney’s trunk, and had stolen it accordingly. Of course there would have been no burglary in that case. Can it make any difference that the agreement to steal was made before they unlocked the door and entered the room? Suppose it had been, as it may have been, made in Clark’s room, and the parties had then, immediately, stepped from Clark’s room into Henderson and Dabney’s room and stolen the trunk of Dabney. Would the unlocking of the door of the latter room by Henderson, in that case, be breaking of the room within the meaning of the law in regard to burglary, either as to Clarke or as to Henderson? The case stands upon the same ground on which it would have stood, in this respect, if Henderson had been the sole renter and occupier of the room jointly rented and occupied by himself and Dabney. Each joint tenant had the same right of entry, at pleasure, into the joint room, as he would have had into his several room.
Then, can a man commit burglary by breaking his own house, even by actuallv breaking it by violence, much less by unlocking the door and entering in the usual way? Can he break it by mere construction of law?
We see nothing in any of the books to warrant the opinion that he can; and it would be contrary to principle, and the very definition of the offence to say that he can. That definition is, “A breaking and entering the mansion house of another,” &c., not of one’s own house. The offence is aimed at the dwelling house of another, which is his castle, and which the law protects both against civil and criminal injuries. Here the offence was aimed, not at the dwelling house of Henderson, *that was thrown open to Clarke by the owner or the occupant, but at the trunk of Dabney. It may be said that the joint room was the dwelling house of Dab-ney as well as of Henderson, and so it was, but that, as before said, can make no difference. Dabney consented to rent a room jointly with Henderson, and thus consented that it should be the dwelling house of Henderson, with all the right of entry possessed by a sole occupant.
The cases of constructive breaking by conspiracy are cases in which one of the conspirators is not the owner of the hoitse, but a servant of the owner, or one having a bare charge and not actual possession thereof; where there is a bare charge, the person having such charge may open the door and enter at pleasure, so long as he is acting in pursuance of such charge, and of the powers and duties which it confers or imposes. But whenever he conspires with, another wrong doer to open the door and let him in to commit a felony, and the opening and entering are accordingly done, both parties are guilty of burglary. There has been in that case a breaking and entering of the mansion house of another, in strict pursuance of the definition of the offence. The house is in no sense the house of the servant, who had only a bare charge in regard to it, and the power conferred by that charge ceased to exist when the servant sought to pervert it to the injury of his employer by opening an entrance into his dwelling house to a felon by night. Henderson stood in no relation of a servant to Dabney in regard to the room which they *616 jointly occupied, but had the actual possession and legal right of possession of that room jointly with Dabney.
There is a case referred to in 1 Russell on Crimes, 816, 817, in which a guest at an inn broke open and *robbed the room of another guest at the same inn, being aided in such breaking by the landlord, to whom he pretended that the other guest had stolen his goods. Mr. Baron Adams, who tried the prisoner, doubting whether the bed-chamber could- properly be called the dwelling house of the prosecutor, as stated in the indictment, the case was submitted to the consideration of the judges. They all thought that though the prosecutor had for that night a special interest in the bed-chamber, j'et that it was merely for a particular purpose, viz: to sleep there that night as a travelling guest, and not as a regular lodger; that he had no certain and permanent interest in the room itself, but that both the property and possession of the room remained in the landlord, who would be answerable civiliter for any goods of his guest that were stolen, in that room, even for the goods then in question, which he could not be unless the room were deemed to be in his possession. They thought also that the landlord might have gone into the room when he'pleased, and would not have been a trespasser to the guest. The landlord in this case, says Russell, does not appear- to have been privy to the felonious intent of the prisoner; but even if the landlord had been an accomplice in the act of the prisoner, it seems that his offence would not have been burglary; for though it had been said that if the host of an inn break the chambers of his guest in the night to rob him, it is burglary, that doctrine is questioned; and it was well observed that there seems to be no distinction between that case and the case of an owner residing in the same house, breaking the chamber of an inmate, having the same outer door as himself, which would not be burglary; and for this doctrine is cited 2 East P. C., ch. 5, sec. 15, p. 502.
That authority, cited from Russell and from East, *shows that if the landlord or owner residing in the same house, breaking open the room of a guest or an inmate of the house, would not be guilty of burglary, a fortiori a joint tenant would not be guilty of that offence in unlocking the door of the joint tenement and taking therefrom the goods of his room-mate. In the former case the guest or inmate may be said to have in some sense a separate possession of his chamber during his occupancy of it, so as to make it, by construction of law, his dwelling-house and not that of his host; but in the latter case, beyond all question, the joint tenement is as much the dwelling of one of the joint tenants as the other; and that is precisely this case.
There can be no doubt but that Clarke and Henderson stand upon the same footing in regard to the offence committed by them; and if it was not burglary in Henderson, it was not burglary in Clarke. If Henderson had a right to unlock the door and enter, he certainly had a right to permit Clarke to enter.
The cases before stated from Russell, of constructive breaking by threats and fraud, are cases in which though the entry by the felon may have been by the act of the owner, yet such act was not freely and voluntarily done, but was induced by force or the apprehension thereof, or fraud; and so was not, in contemplation of law, the act of the owner. It was done invito domino.
We have seen no case, and think there has been none, in which the entry was by the voluntary act and consent of the owner or occupier of the house, which has been held to be burglary. And were we to affirm the judgment in this case, we would establish a doctrine of constructive burglary which would not only be new, but contrary to the well known definition *of that offence. While the legislature might make such a change, we think it would be judicial legislation in us to do so. If the question, upon principle, were more doubtful than it is, we would be inclined in favorem vitae, not to apply the doctrine of constructive burglary to this new case. The offence of burglary may be punished with death.
We are therefore of opinion that the Hustings court erred, both in refusing to give the instruction asked for by the prisoner, and in giving, in lieu thereof, the instruction which was given, and also in overruling the motion of the prisoner to set aside the verdict and grant him a new trial. The judgment must therefore be reversed, the verdict set aside, and the cause remanded to the Hustings court, for a new trial to be had therein in conformity with the foregoing opinion. On which new trial the prisoner may be acquitted of the felonious and burglarious breaking and entering into the dwelling-house, but convicted of the larceny as charged in the indictment. See Code, ch. 202, §§ 27 and 30, pp. 1248 and 1249.
ANDERSON, STAPLES, and BOÜE-DIN, Js., concurred in the opinion of Mon-cure, P.
CHRISTIAN, J., dissented.
Judgment reversed.
BURGLARY AND HOUSEBREAKING.
I. In General.
II. Essentials.
A. Breaking ana Entry.
B. Kind of House.
C. Ownership.
D. Time.
E. Intent.
III. Evidence.
A. Possession as Evidence.
B. Circumstantial Evidence.
IV. Conviction of Larceny on Indictment for Burglary.
V. New Trial and Writ of Error.
*617 I. IN GENERAL.
Definition. — Burglary is defined to be, “A breaking- and entering of the mansion house of another in the night, with intent to commit some felony within the same, whether such felonious intent be executed or not." Clarke v. Com., 25 Gratt. 911. See Code Va. 1887, §§ 3704-3705-3706.
Indictment. — In State v. Meadows, 22 W. Va. 770, it was held, if a house was occupied as a dwelling house, and a person broke and entered it in the nighttime with intent to commit a felony, the indictment charging the offence must necessarily aver that it was done “burglariously.”
In State v. McDonald, 9 W. Va. 460, the indictment was for burglary, and the house entered was a dwelling house. The indictment did not say the breaking and entering was “feloniously and bur-glariously” done. The court doubted the sufficiency ot the indictment but the case was decided on another point. State v. Cottrell, 45 W. Va. 837, 32 S. E. Rep. 162.
In State v. Vest, 21 W. Va. 806, it was held that the omission of the word “feloniously” in an indictment for a felony was a fatal defect.
In Randall v. Com., 24 Gratt. 647, it was said: "The court is further of opinion that the indictment itself is fatally defective, as an indictment for felony, in not averring that the act charged was done ‘feloniously.’”
In State v. McClung, 35 W. Va. 280, 13 S. E. Rep. 654, on an indictment for a felony, it was held fatal error that no count in the indictment concluded “against the peace and dignity of the state” as is required by Const. W. Va.. art. 2, §8. See Lemons v. State, 4 W. Va. 755. See Code Va. 1887, § 3999. See Const. Va. art. 6, § 26.
Venue. — An indictment laying the offence as committed in the county of N in the parish of B, without the words, withm.the jurisdiction of this court, or within the county, or the dist?'ict composed of the counties for which the court is held, was bad, after verdict, until the act of Jan. 24th. 1804. Com. v. Richards, 1 Va. Cas. 1.
In Richardson v. Com., 80 Va. 124, it was said, an indictment cannot be sustained without proof that the offence was committed in the county where the venue is laid. This case was followed in the case of Butler v. Com., 81 Va. 163.
II. ESSENTIALS.
A. Breaking and Entry. — The breaking which is an essential part of the crime of burglary may be either actual or constructive. Constructive breaking includes entrance effected by threats, fraud, or conspiracy. Clarke v. Com., 25 Gratt. 912.
The word “break” used in the statute as to housebreaking is borrowed from the law in regard to burglary. If then, in any case, a party shall by even slight force remove or displace anything attached to the house as a part thereof, and relied on by the occupant for safety of the house, it is housebreaking within the meaning of the statute, if the other constituent parts of the offense exist. Finch v. Com., 14 Gratt. 643.
In Hunter v. Com., 7 Gratt. 641, there is a dictum by Judge Field to the effect that the removal of a cloth from one of the nails by which it hung over a window was not a sufficient breaking to constitute burglary.
B. Kind of House. — An indictment for housebreaking need not negative the idea that the bar room. which was broken into and entered, adjoined any dwelling house except that of the prosecutor’s. Lawrence v. Com., 81 Va. 484.
An instruction that “If the jury believe from the evidence that John B. Morrison held the possession of said house at the time alleged in the indictment, and that he used and occupied said house as a dwelling, then, in contemplation of law, said house was the dwelling house of John B. Morrison, although he may have absented himself therefrom for several months, and although he may have had another dwelling house during the same time” sufficiently describes the house as a dwelling house and was properly given. State v. Williams, 40 W. Va. 268, 21 S. E. Rep. 721.
The words “or other house” in ch. 145, § 12. of Code W. Va. include a dwelling house. State v. McDonald, 9 W. Va. 456. See Code Va. 1887, § 3705; State v. Williams, 40 W. Va. 268, 21 S. E. Rep. 731.
C. Ownership. -An indictment for burglary must state the owner of the property, and the proof of ownership must be as charged in the indictment. State v. Hill, 47 w. Va. —, 35 S. E. Rep. 831.
One who rents a barn, though he gave another the privilege of keeping a horse therein, is still the owner and should be so described in an indictment for burglary. State v. Betsall, 11 W. Va. 730.
In Webster v. Com., 80 Va. 598. it was held, that an indictment for housebreaking which describes the property as “a certain mill house not adjoining to or occupied with the dwelling-house of Frances Newman,” was a sufficient allegation of ownership by said Frances Newman. See in accord, Speers v. Com., 17 Gratt. 570; Butler v. Com., 81 Va. 159; State v. Reece, 27 W. Va. 375. See contra, State v. Hupp, 31 W. Va. 355, 6 S. E. Rep. 919, overruling State v. Reece, 27 W. Va. 375.
An indictment charging the prisoner with felo-niously stealing and carrying away a lot of queens-warc, is good after verdict, though it does not specify the articles or state they were the property of L or any other person. Vaughan v. Com., 17 Gratt. 576; Wright v. Com., 82 Va. 183. See Code Va. 1887, § 3996; Code W. Va. ch. 158, § 7.
D. Time. — in every indictment for burglary it must distinctly and plainly appear that the offence was committed in the nighttime, but an indictment omitting to state such time may still be good as an indictment for larceny. Com. v. Marks, 4 Leigh 712 [660].
In Cool v. Com., 94 Va. 799, 26 S. E. Rep. 411, where the indictment was for breaking and entering a “mill house” with intent to commit larceny therein, the judgment was reversed for failure to state the time of the offence charged. If committed between Feb. 12, 1894 and Jan. 9,1896 it was a misdemeanor; if before or after that period it was a felony. Time, therefore, was of the essence of the offence and should have been stated.
E. Intent. — The allegation of actual larceny in an indictment for burglary or housebreaking is simply to show the intent to commit a felony, which intent is an essential part of these crimes. Speers v. Com. 17 Gratt. 573.
Since the allegation of actual larceny in an indictment for burglary is only to show the intent, such allegation need not be made with the same formality as in an indictment for larceny itself. Vaughan v. Com., 17 Gratt. 579; Wright v. Com., 82 Va. 185; State v. McClung, 35 W. Va. 280, 13 S. E. Rep. 654. See dissenting opinion of English and Bran- *618 non, JJ., in State v. Caddle, 35 W. Va. 73, 12 S. E. Rep. 1098.
The intent constitutes an essential part of the crime of burglary and should be both alleged and proved. Vaughn v. Com., 10 Gratt. 758.
That property is taken openly, in the presence of the owner, affords a strong presumption that it was not taken feloniously but under a Iona Me claim of right. State v. Shores, 31 W. Va. 491, 7 S. E. Rep. 420; State v. Caddle, 35 W. Va. 73, 12 S. E. Rep. 1098.
It is peculiary the province of the jury to determine the intent with which any act is done. Starkie v. Com., 7 Leigh 756.
III.EVIDENCE.
A. Possessionas Evidence. — The possession of stolen property, recently after the theft, raises a prima facie presumption of fact that the person found in possession is the thief; but to have-this effect such possession should be exclusive. Price v. Com., 21 Gratt. 846; Taliaferro v. Com., 77 Va. 413. But see State v. Heaton, 23 W. Va. 793-795, and State v. Reece, 27 W. Va. 379; Porterfield v. Com., 91 Va. 801.
If the property was not stolen but lost, mere possession is not even prima facie evidence of guilt. Hunt v. Com., 13 Gratt. 757.
Certainly the recent possession of stolen property Is important evidence, and in connection with other evidence may sustain a conviction for larceny. Walker v. Com., 28 Gratt. 969.
In Taliaferro v. Com., 77 Va. 413, it was said: “It has never been decided in the state that such possession is even prima facie proof of guilt in cases of burglary and housebreaking.”
In Gravely v. Com., 86 Va. 400, 10 S. E. Rep. 431, it was decided that in cases of larceny the possession of goods recently stolen is prima facie evidence of guilt, and throws upon the accused the burden of accounting for that possession. But this rule has never been held by this court to apply with the same effect in cases of burglary and housebreaking, and the decided weight of authority is that it does not.
Though mere possession does not raise a prima fade presumption of the burglary or housebreaking charged, yet in connection with other evidence of such burglary or housebreaking, evidence of possession of Stolen goods is admissible to determine the guilt of the prisoner. Wright v. Com., 82 Va. 188; Gravely v. Com., 86 Va. 400, 10 S. E. Rep. 431; Walker v. Com., 28 Gratt. 969; Hall’s Case, 3 Gratt. 593; Por-terfield v. Com., 91 Va. 806, 22 S. E. Rep. 352; Henderson v. Com., 98 Va. 794, 34 S. E. Rep. 881, 5 Va. Law Reg. 855. (1900.)
B. Circumstantial Evidence. — The rule here as in other cases is that the circumstantial evidence should be acted on with the utmost caution. See Johnson v. Com., 29 Gratt. 796, and note-, Porterfield v. Com., 91 Va. 801, 22 S. E. Rep. 352; Bundick v. Com., 97 Va. 787, 34 S. E. Rep. 454; Hite V. Com., 88 Va. 882, 14 S. E. Rep. 696.
IV.CONVICTION OP LARCENY ON INDICTHENT FOR BURGLARY.
On an indictment for housebreaking if actual larceny be properly stated there may be a conviction for such larceny though the prisoner is acquitted of the housebreaking. Vaughan v. Com., 17 Gratt. 576; State v. Reece, 27 W. Va. 375; State v. Flanagan (W. Va.), 35 S. E. Rep. 862.
If in an indictment for housebreaking, there be a separate count charging larceny, there may be a conviction for both crimes and a separate punishment inflicted for each. Speers v. Com., 17 Gratt. 570.
Housebreaking with intent to commit larceny, and grand larceny are distinct offences under the law, and to each is affixed its own penalty, but they may be and often are one continued act, and may be charged in the same count of an indictment. Upon such count the accused may be found guilty of either of the offences, but there can be only one penalty imposed. If it is desired to punish for both offences in a case of this kind, there must be inserted in the indictment a separate count for the larceny. An acquittal, where there is but one count, is a bar to prosecution for all offences therein charged. If there is a conviction generally, or of the grand lar-cenj’ only, and it is submitted to, it is a bar to further prosecution. State v. McClung, 35 W. Va. 280, 13 S. E. Rep. 654; Benton v. Com., 91 Va. 788, 21 S. E. Rep. 495.
On an indictment for house breaking which charges actual larceny, a general finding of guilty would lead to a sentence for housebreaking, and not larceny. Speers v. Com., 17 Gratt. 574; Butler v. Com., 81 Va. 162; State v. Williams, 40 W. Va. 268, 21 S. E. Rep. 721. See in general, on the subj ect of Bwalary: monographic note on “Accessories” appended to Maybush v. Com., 29 Gratt. 857; monographic note on “Continuances” appended to Harman v. Howe, 27 Gratt. 676; monographic note on “Confessions” appended to Schwartz v. Com., 27 Gratt. 1025; mono-graphic note on “Autrefois Acquit” appended to Page v. Com., 26 Gratt. 943.
A person found guilty by the verdict of a jury, under abad count for burglary, cannot be sentenced for housebreaking, although the indictment contains a good count charging the latter offence. State v. Cottrell, 45 W. Va. 837, 32 S. E. Rep. 162.
V.NEW TRIAL AND WRIT OF ERROR.
If on conviction of prisoner he obtains a writ of error, which is directed to operate as a supersedeas, and then escapes from jail, the appellate court will discharge so much of the order awarding the writ of error as directed it to operate as a supersedeas to the judgment, and will further direct that the writ of error be dismissed by a certain day, unless it shall be made to appear to the court by that day, that the plaintiff in error is in proper custody. State v. Conners, 20 W. Va. 1; State v. Sites, 20 W. Va. 13.
In a case tried by jury a foundation must be laid for a bill of exceptions to rulings of the court by making a motion for a new trial. State v. Phares, 24 W. Va. 657; State v. Rollins, 31 W. Va. 363, 6 S. E. Rep. 923; State v. Thompson, 26 W. Va. 150; Danks v. Rodeheaver, 26 W. Va. 274.
This rule has now been changed in Virginia by statute. See Pollard’s Supp., § 3385a; Newberry v. Williams, 89 Va. 298, 15 S. E. Rep. 865. See mono-graphic note on “Instructions” appended to Womack v. Circle, 29 Gratt. 192; monographic note on “Accessories” appended to Maybush v. Com., 29 Gratt. 857; monographic note on “Arguments of Counsel” appended to Coleman v. Com., 25 Gratt. 865.
On indictment for a felony the record must show that the prisoner was present in court when the pleadings were made up and pleaded in person. Hooker v. Com., 13 Gratt. 763; State v. Sutfin, 22 W. Va. 771; State v. Conkle, 16 W. Va. 736; Sperry v. Com., 9 Leigh 623.