THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBRA SWANSON, Defendant-Appellant.

Second District    No. 2—98—0365

Opinion filed November 9, 1999.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Roger T. Russell, State's Attorney, of Belvidere (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Lynn Hirschfeld Brahin, of Chicago, for the People.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

In July 1997, defendant, Debra Swanson, was charged by information with one count of disorderly conduct premised on the transmission of a false report to a peace officer (720 ILCS 5/26—1(a)(4) (West 1996)). The State provided a short bill of particulars in response to defendant's request. The trial court denied defendant's pretrial motion which sought to dismiss the charge based on the failure of the charge to allege facts specific enough to state an offense. Following a bench trial, the circuit court found defendant guilty of disorderly conduct and sentenced her to a one-year term of conditional discharge and six days' confinement in the county jail. The court also ordered defendant to pay $480 in costs and fines. The court denied defendant's posttrial motion to reconsider the motion to dismiss the charge and to set aside the judgment.

Defendant timely appeals. Defendant again argues that the information was legally insufficient because it failed to set forth the offense with sufficient specificity, and she therefore urges that her conviction

be reversed. We agree with defendant, and we reverse her conviction and her sentence.

We recite only those facts necessary to understand our disposition of this appeal. The information arose from an incident that occurred on or about March 29, 1997, in Boone County. The bystander's report of the trial states that Deputy Ohlsen was dispatched to defendant's residence in response to an alarm. He located defendant at a neighbor's house. According to Ohlsen, defendant stated to him that her live-in boyfriend, Richard Piper, had struck her and pushed her to the floor. Ohlsen noticed marks on her face and a small amount of blood from a cut. Defendant was taken to the hospital for medical attention. Piper was arrested and gave an oral statement at the public safety building.

Ohlsen went to St. Joseph's Hospital to take a statement from defendant. She related to Ohlsen that she had been in an accident involving Piper's truck and had been charged with driving under the influence of alcohol. When she returned home, she and Piper got into a heated argument when Piper found out that his vehicle had been damaged. Piper was drinking and defendant was still intoxicated. Defendant blamed their problems on alcohol, poured Piper's drink down the drain in the kitchen, and poured a half-empty bottle of gin and a full bottle of whiskey down the drain. Piper objected, tried to grab the bottle of gin from her, and struck her on the right temple with the bottle. They struggled; he threw her to the floor and poured the contents of the gin bottle over her head, causing her to choke. She ran to the bedroom, changed clothes, and pushed the panic button.

Ohlsen also testified regarding a written statement that defendant wrote out after making the oral statement while she was still in the hospital. Ohlsen testified that defendant made the statement soon after the incident while she was still intoxicated and had not been read her *Miranda* rights.

Michelle Carey, a third-year law student who worked at the State's Attorney's office, testified that she was in the courtroom during parts of Piper's domestic battery trial. Carey recalled that defendant recanted what she had written in her statement.

Jim Hursh, the former State's Attorney who prosecuted misdemeanors, testified that, at Piper's trial, defendant flip-flopped and gave a different statement from her written statement. Defendant testified at that trial that she had slipped on the liquid on the kitchen floor as she pulled away from Piper, and she fell to the ground, striking her face on the corner of the dishwasher. She had told Hursh this version before trial and had asked him to drop the charges against Piper. Despite the prosecutor's attempted impeachment of defendant with her differing statements, Piper was acquitted.

The thrust of defendant's testimony at her own trial was that Piper did not hit her with the bottle during the course of the argument. In an intoxicated stupor, she pulled away from him, slipped on the wet floor, and fell against the dishwasher. When the police arrived, she told the officer what she thought had happened: that Piper had hit her, causing the injuries. When she was taken to the hospital, she was still intoxicated and tried to write out what had happened, but she was confused and upset. She assumed Piper had hit her with the bottle. Later, she realized her error, called Hursh and told him of the error, and asked that he drop the charges against Piper. Piper's testimony largely corroborated that of defendant.

On July 29, 1997, defendant was charged with disorderly conduct by an information as follows:

"That on March 29th., 1997, in Boone County, Illinois, Debra Swanson committed the offense of:

DISORDERLY CONDUCT: in violation of Section 26—(a)(4) of Act 5, of Chapter 720 of the Illinois Compiled Statutes of said State, in that the said defendant knowingly transmitted to Deputy Larry Ohlsen, a Peace Officer for Boone County, Illinois, a report that the offense of domestic battery had been committed, knowing at the time of such transmission, that there was no reasonable ground for believing that such offense had been committed."

■ The sufficiency of this charging instrument presents a question of law, and we review the trial court's decision to deny the dismissal of the charge *de novo*. See *People v. Smith*, 259 Ill. App. 3d 492, 495 (1994). An information will survive a challenge to its legal sufficiency made for the first time on appeal if it apprises the accused of the precise offense charged with sufficient specificity to prepare a defense and to allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Foxall*, 283 Ill. App. 3d 724, 726 (1996). Where, as here, the charging instrument is attacked in the trial court before (or during) trial, the court determines whether the instrument *strictly* complies with the pleading requirements enumerated in section 111—3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(a) (West 1998)); among other things, the charge must set forth the nature and elements of the offense. *People v. Scott*, 285 Ill. App. 3d 95, 99 (1996).

■ The failure to allege an element of the offense sought to be charged is a fundamental defect that renders the charge void, and it cannot be amended as in the case of simple formal defects. *Scott*, 285 Ill. App. 3d at 99. While a defendant may request a bill of particulars to supplement a *sufficient* charge so as to assist him in preparing his defense, a bill of particulars cannot be used to cure a void charge. *People v. Meyers*, 158 Ill. 2d 46, 53 (1994).

■ Although a statute, by its words alone, may sufficiently apprise an accused of the criminal charge, a disorderly conduct offense of the type before us is one that is only generally described by the statute. Therefore, the State is required to plead additional, specific facts describing the particular conduct constituting the offense so as to apprise the accused of the nature and elements of the offense and thereby satisfy the constitutional requirement that an accused be informed of the nature and cause of the criminal offense. *Foxall*, 283 Ill. App. 3d at 727 (knowingly transmitting false report to Department of Children and Family Services (DCFS)); U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8; see *Scott*, 285 Ill. App. 3d at 99-100 (knowingly doing any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace).

Because of its similarity to *Foxall*, this case falls within its ambit. In *Foxall*, a charge of transmitting a false report to the DCFS on a given date was found fatally defective where it alleged, in relevant part, that the defendant "knowingly transmitted a false report" to the DCFS in that " 'defendant reported that Rhonda Reed had committed acts of sexual misconduct, and did then and there, thereby commit the offense of DISORDERLY CONDUCT.' " *Foxall*, 283 Ill. App. 3d at 726. The reviewing court affirmed the dismissal of the charge, explaining that sexual misconduct could encompass myriad acts or an uncertain list of possible acts. The court added that "basic fairness demands that Foxall be told exactly what she allegedly transmitted as a false report." *Foxall*, 283 Ill. App. 3d at 727. Because of the lack of specific facts in the information regarding the false report, the court further concluded that the instrument did not sufficiently apprise the accused of the offense so that she could prepare a competent defense and plead a judgment as a bar to a future prosecution.

■ Here, the information does not describe with particularity the time, date, or location of the alleged domestic battery and the acts comprising the battery. It does not identify the alleged batterer or the victim, nor does it otherwise specify the statement that was falsely reported. Domestic battery itself can be committed in at least two ways and can be either a Class A misdemeanor or a Class 4 felony. See 720 ILCS 5/12—3.2 (West 1996). We note additionally that there appear to have been two statements made by defendant: an initial oral statement and a later written statement.

As in *Foxall*, we too believe that basic fairness demands that the charging instrument tell defendant exactly what she allegedly transmitted as a false report to the officer. Not only is the charge insufficient to apprise the accused of the offense so that she can prepare a competent defense, but the charge is vague enough so that

it would be problematic to plead any resulting judgment as a bar to a future prosecution arising out of the same conduct. The conviction of disorderly conduct and the sentence therefor must be reversed without a remand. *Scott*, 285 Ill. App. 3d at 100-01.

The judgment of the circuit court of Boone County is reversed.

Reversed.

McLAREN and COLWELL, JJ., concur.