Justice ALITO, dissenting.
The Court holds, on highly technical grounds, that no California burglary conviction qualifies as a burglary conviction under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(c). This is so, according to the Court, because (1) burglary under California law is broader than so-called "generic burglary"-unlawfully entering or remaining in a building with the intent to commit a crime; (2) the California burglary statute is not "divisible"; and (3) our "modified categorical approach" cannot be used in a case involving an indivisible statute. Even when it is apparent that a California burglary conviction was based on what everyone imagines when the term "burglary" is mentioned-e.g., breaking into a home to steal valuables-that conviction, the Court holds, must be ignored.
I would give ACCA a more practical reading. When it is clear that a defendant necessarily admitted or the jury necessarily found that the defendant committed the elements of generic burglary, the conviction should qualify. Petitioner's burglary conviction meets that requirement, and I would therefore affirm the decision of the Court of Appeals.
I
Before petitioner was charged in the case now before us, he had already compiled a criminal record that included convictions *282 in Washington State for assault and threatening to kill a judge, and convictions in California for robbery and burglary. See App. 11a-12a; 466 Fed.Appx. 563, 565 (C.A.9 2012). After his release from custody for these earlier crimes, petitioner fired a gun in the direction of a man who supposedly owed him money for methamphetamine, and as a result, he was charged in federal court with possession of a firearm by a convicted felon, in violation of § 922(g)(1). A jury found him guilty, and the District Court imposed an enhanced sentence under ACCA because he had the requisite number of previous convictions for "a violent felony or a serious drug offense." § 924(e). ACCA defines a "violent felony" to include a "burglary" that is "punishable by imprisonment for a term exceeding one year," § 924(e)(2)(B), and both the District Court and the Court of Appeals found that petitioner's California burglary conviction fit this definition.
While the concept of a conviction for burglary might seem simple, things have not worked out that way under our case law. In Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), we held that "burglary" under ACCA means what we called "generic burglary," that is, the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Determining whether a burglary conviction qualifies under this definition is *2296 easy if the elements set out in the state statute are the same as or narrower than the elements of generic burglary, see ibid., but what if the state offense is broader? In that event, we have held, a federal court may sometimes apply what we have termed the "modified categorical approach," that is, it may examine some items in the state-court record, including charging documents, jury instructions, and statements made at guilty plea proceedings, to determine if the defendant was actually found to have committed the elements of the generic offense. See Shepard v. United States, 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) ; Taylor, supra, at 602, 110 S.Ct. 2143. *283 Petitioner argues that his 1978 conviction for burglary under California Penal Code § 459 does not qualify as a burglary conviction for ACCA purposes because of the particular way in which this provision is worded. Section 459 provides that a "person who enters" certain locations " with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal.Penal Code Ann. § 459 (West 2010). This provision is broader than generic burglary in two respects.
The first, which does not preclude application of the modified categorical approach, concerns the place burglarized. While generic burglary applies only to offenses involving the entry of a building, the California provision also reaches offenses involving the entry of some other locations, see ibid. Under our cases, however, a federal court considering whether to apply ACCA may determine, based on an examination of certain relevant documents, whether the conviction was actually based on the entry of a building and, if it was, may impose an increased sentence. See Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ; Nijhawan v. Holder, 557 U.S. 29, 35, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) ; Shepard, supra, at 26, 125 S.Ct. 1254.
The second variation is more consequential. Whereas generic burglary requires an entry that is unlawful or unprivileged, the California statute refers without qualification to "[e]very person who enters." § 459. Petitioner argues, and the Court agrees, that this discrepancy renders the modified categorical approach inapplicable to his California burglary conviction.
II
The Court holds that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." Ante, at 2282. Because the Court's holding is based on the distinction between "divisible" and "indivisible" statutes, it is important to identify precisely what this taxonomy means.
*284 My understanding is that a statute is divisible, in the sense used by the Court, only if the offense in question includes as separate elements all of the elements of the generic offense. By an element, I understand the Court to mean something on which a jury must agree by the vote required to convict under the law of the applicable jurisdiction. See ante, at 2288 (citing Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ). And although the Court reserves decision on the question whether a sentencing court may take authoritative judicial decisions into account in identifying the elements of a statute, see ante, at 2291 - 2292 I will assume that a sentencing court may do so. While the elements of a criminal offense are generally set out in the statutory text, courts sometimes find that unmentioned elements are implicit. See, e.g., Neder v. United States, 527 U.S. 1, 20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that federal mail fraud, wire *2297 fraud, and bank fraud statutes require proof of materiality even though that element is not mentioned in the statutory text). I cannot think of any reason why an authoritative decision of this sort should be ignored, and the Court has certainly not provided any. I therefore proceed on the assumption that a statute is divisible if the offense, as properly construed, has the requisite elements.
The Court's holding that the modified categorical approach may be used only when a statute is divisible in this sense is not required by ACCA or by our prior cases and will cause serious practical problems.
A
Nothing in the text of ACCA mandates the Court's exclusive focus on the elements of an offense. ACCA increases the sentence of a defendant who has "three previous convictions ... for a violent felony," 18 U.S.C. § 924(e)(1) (emphasis added), and the Court claims that the word "convictions" mandates a narrow, elements-based inquiry, see ante, at 2287 - 2288. But "[i]n ordinary speech, when it is said that a person was convicted of or for doing something, the 'something' may include facts that go beyond the bare elements of the relevant *285 criminal offense." Moncrieffe v. Holder, 569 U.S. ----, ----, 133 S.Ct. 1678, 1701, 185 L.Ed.2d 727 (2013) (ALITO, J., dissenting).
Nor is an exclusively elements-based inquiry mandated by ACCA's definition of a "violent felony" as "any crime ... that ... is burglary," § 924(e)(2)(B)(ii). In drafting that provision, Congress did not say "any crime that has the elements of burglary." Indeed, the fact that Congress referred to "elements" elsewhere in the same subparagraph, see § 924(e)(2)(B)(i) (defining "violent felony" to mean any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (emphasis added)), but omitted any reference to elements from § 924(e)(2)(B)(ii) suggests, if anything, that it did not intend to focus exclusively on elements. Cf. Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S, 566 U.S. ----, ----, 132 S.Ct. 1670, 1682-83, 182 L.Ed.2d 678 (2012).
B
The Court says that our precedents require an elements-based approach and accuses the Court of Appeals of "flout[ing] our reasoning" in Taylor, Shepard, Nijhawan, and Johnson, see ante, at 2283 - 2285, 2288, but that charge is unfounded. In at least three of those cases, the Court thought that the modified categorical approach could be used in relation to statutes that may not have been divisible.
Shepard concerned prior convictions under two Massachusetts burglary statutes that applied not only to the entry of a "building" (as is the case with generic burglary) but also to the entry of a "ship, vessel, or vehicle." Mass. Gen. Laws Ann., ch. 266, § 16 (West 2000). See also § 18; 544 U.S., at 17, 125 S.Ct. 1254. And the Shepard Court did not think that this feature of the Massachusetts statutes precluded the application of the modified categorical approach. See id., at 25-26, 125 S.Ct. 1254;ante, at 2283 - 2284. See also Nijhawan, 557 U.S., at 35, 129 S.Ct. 2294 (discussing Shepard ).
In today's decision, the Court assumes that "building" and the other locations enumerated in the Massachusetts *286 statutes, such as "vessel," were alternative elements, but that is questionable. It is quite likely that the entry of a building and the entry of a vessel were simply alternative means of satisfying an element. See *2298 Commonwealth v. Cabrera, 449 Mass. 825, 827, 874 N.E.2d 654, 657 (2007) ("The elements of breaking and entering in the nighttime with intent to commit a felony are (1) breaking and (2) entering a building, ship, vessel or vehicle belonging to another (3) at night, (4) with the intent to commit a felony"). "[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes." Schad v. Arizona, 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality). The feature that distinguishes elements and means is the need for juror agreement, see Richardson, supra, at 817, 119 S.Ct. 1707, and therefore in determining whether the entry of a building and the entry of a vessel are elements or means, the critical question is whether a jury would have to agree on the nature of the place that a defendant entered.
A case that we decided earlier this Term illustrates why "building" and "vessel" may have been means and not separate elements. In Lozman v. Riviera Beach, 568 U.S. ----, 133 S.Ct. 735, 184 L.Ed.2d 604 (2013), we were required to determine whether a "floating home" (a buoyant but not very sea-worthy dwelling) was a "vessel." Seven of us thought it was not; two of us thought it might be. Compare id., at ----, 133 S.Ct., at 739, with id., at ----, 133 S.Ct., at 744-45. (SOTOMAYOR, J., dissenting). Suppose that a defendant in Massachusetts was charged with breaking into a structure like the Lozman floating home. In order to convict, would it be necessary for the jury to agree whether this structure was a "building" or a "vessel"? If some jurors insisted it was a building and others were convinced it was a vessel, would the jury be hung? The Court's answer is "yes." According to the Court, if a defendant had been charged with burglarizing the Lozman floating home and this Court had been sitting as the jury, the defendant would have escaped conviction *287 for burglary, no matter how strong the evidence, because the "jury" could not agree on whether he burglarized a building or a vessel.
I have not found a Massachusetts decision squarely on point, but there is surely an argument that the Massachusetts Legislature did not want to demand juror agreement on this question. In other words, there is a strong argument that entry of a "building" and entry of a "vessel" are merely alternative means, not alternative elements. And if that is so, the reasoning in Shepard undermines the Court's argument that the modified categorical approach focuses solely on elements and not on conduct.
Johnson , like Shepard, involved a statute that may have set out alternative means, rather than alternative elements. Under the Florida statute involved in that case, a battery occurs when a person either "1. [a]ctually and intentionally touches or strikes another person against the will of the other; or 2. [i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a) (2010). It is a distinct possibility (one not foreclosed by any Florida decision of which I am aware) that a conviction under this provision does not require juror agreement as to whether a defendant firmly touched or lightly struck the victim. Nevertheless, in Johnson, we had no difficulty concluding that the modified categorical approach could be applied.[1] See 559 U.S., at 137, 130 S.Ct. 1265.[2]
*2299 *288 Far from mandating the Court's approach, these decisions support a practical understanding of the modified categorical approach. Thus, in Shepard, we observed that the factual circumstances of a defendant's prior conviction may be relevant to determining whether it qualifies as a violent felony under ACCA. See 544 U.S., at 20-21, 125 S.Ct. 1254 ("With such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic, just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case" (emphasis added; citation omitted)); id., at 24, 125 S.Ct. 1254 (plurality opinion) ("Developments in the law since Taylor ... provide a further reason to adhere to the demanding requirement that ... a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary" (emphasis added)); id., at 25, 125 S.Ct. 1254 (noting that, in the context of a nongeneric burglary statute, unless the charging documents "narro[w] the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a *289 valid plea" (emphasis added)). And in Nijhawan, we departed from the categorical approach altogether and instead applied a "circumstance-specific" approach. See 557 U.S., at 36, 38, 129 S.Ct. 2294. If anything, then, Nijhawan undermines the majority's position that rigid adherence to elements is always required.
C
The Court fears that application of the modified categorical approach to statutes such as § 459 would be unfair to defendants, who "often ha[ve] little incentive to contest facts that are not elements of the charged offense" and "may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations."Ante, at 2289. This argument attributes to criminal defendants and their attorneys a degree of timidity that may not be realistic. But in any event, even if a defendant does not think it worthwhile to "squabbl[e]" about insignificant factual allegations, a defendant clearly has an incentive to dispute allegations that may have a bearing on his sentence. And that will *2300 often be the case when alternative elements or means suggest different degrees of culpability. Cf. Cal.Penal Code Ann. § 460 (providing that burglary of certain inhabited locations enumerated in § 459 is punishable in the first degree, and that burglary of all other locations is punishable in the second degree).
D
The Court's approach, I must concede, does have one benefit: It provides an extra measure of assurance that a burglary conviction will not be counted as an ACCA predicate unless the defendant, if he went to trial, was actually found by a jury to have committed the elements of the generic offense. But this extra bit of assurance will generally be quite modest at best.
To see why this is so, compare what would happen under an indivisible burglary statute that simply requires entry invading *290 a possessory right, and a divisible statute that has the following two alternative elements: (1) entry by trespass and (2) entry by invitation but with an undisclosed criminal intent. Under the former statute, the jury would be required to agree only that the defendant invaded a possessory right when entering the place in question, and therefore it would be possible for the jury to convict even if some jurors thought that the defendant entered by trespassing while others thought that he entered by invitation but with an undisclosed criminal intent. Under the latter statute, by contrast, the jury would have to agree either that he trespassed or that he entered by invitation but with an undisclosed criminal intent.
This requirement of unanimity would be of some practical value only if the evidence in a case pointed to both possibilities, and in a great many cases that will not be so. In cases prosecuted under the California burglary statute, I suspect, the evidence generally points either to a trespassory entry, typically involving breaking into a building or other covered place, or to an entry by invitation but with an undisclosed criminal intent (in many cases, shoplifting). Cases in which the evidence suggests that the defendant might have done either are probably not common. And in cases where there is evidence supporting both theories, the presence of a divisible statute containing alternative elements will not solve the problem: A guilty verdict will not reveal the alternative on which the jury agreed unless the jury was asked to return a special verdict, something that is not generally favored in criminal cases. See 6 LaFave § 24.10(a), at 543-544.
In cases that end with a guilty plea-and most do-the benefit of divisibility is even less. A judge who accepts a guilty plea is typically required to confirm that there is a factual basis for the plea, see 5 id., § 21.4(f), at 835-840 (3d ed. 2007 and Supp. 2011-2012), and the proffer of a factual basis will generally focus exclusively on one of the alternative elements.
*291 The Court nevertheless suggests that the extra modicum of assurance provided in cases involving divisible statutes is needed to prevent violations of the Sixth Amendment jury trial right, ante, at 2287 - 2289, but I disagree. So long as a judge applying ACCA is determining, not what the defendant did when the burglary in question was committed, but what the jury in that case necessarily found or what the defendant, in pleading guilty, necessarily admitted, the jury trial right is not infringed. See Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). When the modified categorical approach is used to decide whether " a jury was actually required to find all the elements of [a] generic [offense]," the defendant has already enjoyed his Sixth Amendment right to a jury determination *2301 of those elements. Taylor, 495 U.S., at 602, 110 S.Ct. 2143.
III
While producing very modest benefits at most, the Court's holding will create several serious problems.
A
Determining whether a statute is divisible will often be harder than the Court acknowledges. What I have said about the statutes involved in Shepard and Johnson illustrates this point. The Court assumes that those statutes were divisible, but as I have explained, it is possible that they were not. See supra, at 2297 - 2298.
To determine whether a statute contains alternative elements, as opposed to merely alternative means of satisfying an element, a court called upon to apply ACCA will be required to look beyond the text of the statute, which may be deceptive. Take, for example, Michigan Compiled Laws Annotated § 750.82(1) (West 2004), which criminalizes assault with "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon." The Court seems to assume that a statute like this enumerates alternative elements, ante, at 2290 - 2291, but the Michigan courts have held otherwise.
*292 Under Michigan law, the elements of § 750.82(1) are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." People v. Avant, 235 Mich.App. 499, 505, 597 N.W.2d 864, 869 (1999). Although the statute lists numerous types of weapons, the particular type of weapon is not itself an element that the prosecution must prove beyond a reasonable doubt. Instead, the list of weapons in the statute merely enumerates alternative means of committing the crime.[3]
Even if a federal court applying ACCA discovers a state-court decision holding that a particular fact must be alleged in a charging document, its research is not at an end. Charging documents must generally include factual allegations that go beyond the bare elements of the crime-specifically, at least enough detail to permit the defendant to mount a defense. See 5 LaFave § 19.3(b), at 276. And some jurisdictions require fairly specific factual allegations. See, e.g., N.Y. Crim. Proc. Law Ann. § 200.50 (West 2007) (enumerating detailed requirements for indictment); People v. Swanson, 308 Ill.App.3d 708, 712, 242 Ill.Dec. 351, 721 N.E.2d 630, 633 (1999) (vacating conviction for disorderly conduct for submitting a false police report because information "d [id] not describe with particularity the time, date, or location of the alleged domestic battery and the acts comprising the battery ... [or] the statement that was falsely reported"); Edwards v. State, 379 So.2d 336, 338 (Ala.Crim.App.1979) (it is insufficient for an indictment for robbery to allege the amount of money taken; it "must aver the denomination of the money taken or that the particular denomination is *293 unknown to the grand jury"). Thus, the mere fact that state law requires a particular fact to be alleged in a charging document does not mean that this fact must be found by a jury or admitted by the defendant.
The only way to be sure whether particular items are alternative elements or simply alternative means of satisfying an element *2302 may be to find cases concerning the correctness of jury instructions that treat the items one way or the other. And such cases may not arise frequently. One of the Court's reasons for adopting the modified categorical approach was to simplify the work of ACCA courts, see Shepard, 544 U.S., at 20, 125 S.Ct. 1254; Taylor, 495 U.S., at 601, 110 S.Ct. 2143, but the Court's holding today will not serve that end.
B
The Court's holding will also frustrate fundamental ACCA objectives. We have repeatedly recognized that Congress enacted ACCA to ensure (1) that violent, dangerous recidivists would be subject to enhanced penalties and (2) that those enhanced penalties would be applied uniformly, regardless of state-law variations. See, e.g., id., at 587-589, 110 S.Ct. 2143. See also id., at 582, 110 S.Ct. 2143 (" '[I]n terms of fundamental fairness, the Act should ensure, to the extent that it is consistent with the prerogatives of the States in defining their own offenses, that the same type of conduct is punishable on the Federal level in all cases' " (quoting S.Rep. No. 98-190, p. 20 (1983))); 495 U.S., at 591, 110 S.Ct. 2143 (rejecting disparate results across states based on label given by State to a particular crime).
The Court's holding will hamper the achievement of these objectives by artificially limiting ACCA's reach and treating similar convictions differently based solely on the vagaries of state law. Defendants convicted of the elements of generic burglary in California will not be subject to ACCA, but defendants who engage in exactly the same behavior in, say, Virginia, will fall within ACCA's reach. See Va.Code Ann. § 18.2-90 (Lexis 2009).
*294 I would avoid these problems by applying the modified categorical approach to § 459 -and any other similar burglary statute from another State-and would ask whether the relevant portions of the state record clearly show that the jury necessarily found, or the defendant necessarily admitted, the elements of generic burglary. If the state-court record is inconclusive, then the conviction should not count. But where the record is clear, I see no reason for granting a special dispensation.
IV
When the modified categorical approach is applied to petitioner's conviction, it is clear that he "necessarily admitted"-and therefore was convicted for committing-the elements of generic burglary: the unlawful or unprivileged entry of a building with the intent to commit a crime.
Both the complaint and information alleged that petitioner "unlawfully and feloniously enter[ed]" a building (the "CentroMart") "with the intent to commit theft therein." App. 14a-17a. When the trial court inquired into the factual basis for petitioner's plea, the prosecutor stated that petitioner's crime involved "the breaking and entering of a grocery store." Id ., at 25a. Neither petitioner nor his attorney voiced any objection.[4] Ibid. In order to accept petitioner's plea, the trial court was required under California law to ensure that the plea had a factual basis, see *2303 Cal.Penal Code Ann. § 1192.5 (1978) ; App. 26a, and we must presume that the plea proceedings were conducted in a regular manner, see *295 Parke v. Raley, 506 U.S. 20, 29-30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). The unmistakable inference arising from the plea transcript is that the trial judge-quite reasonably-understood petitioner and his attorney to assent to the factual basis provided by the prosecutor. Both the District Court and the Court of Appeals concluded that petitioner had admitted and, as a practical matter, was convicted for having committed the elements of generic burglary, and we did not agree to review that fact-bound determination, see 567 U.S. ----, 133 S.Ct. 90, 183 L.Ed.2d 730 (2012) (granting certiorari "limited to Question 1 presented by the petition").
Even if that determination is reviewed, however, the lower courts' conclusion should be sustained. Under the California burglary statute, as interpreted by the State Supreme Court, a defendant must either (a) commit a trespass in entering the location in question or (b) enter in violation of some other possessory right. See People v. Gauze, 15 Cal.3d 709, 713-714, 125 Cal.Rptr. 773, 542 P.2d 1365, 1367 (1975).[5]
In this case, the judge who accepted petitioner's guilty plea must have relied on petitioner's implicit admission that he "broke" into the store, for if petitioner had admitted only that he entered the store, the judge would not have been able to assess whether he had invaded a possessory right. Nor would an admission to merely "entering" the store have permitted the judge to assess whether petitioner entered with the intent to commit a crime; petitioner's admission to "breaking" was therefore critical to that element, as well. Cf. Black's Law Dictionary 236 (rev. 4th ed. 1968) ("Breaking" denotes the "tearing away or removal of any part of a house or of the locks, latches, or other fastenings intended to *296 secure it, or otherwise exerting force to gain an entrance, with the intent to commit a felony").
We have explained that burglary under § 924(e) means "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor, 495 U.S., at 598, 110 S.Ct. 2143. Based on petitioner's guilty plea and the Shepard documents, it is clear that petitioner necessarily admitted the elements of generic burglary. He unlawfully entered a building with the intent to commit a crime. Accordingly, I would hold that petitioner's conviction under § 459 qualifies as a conviction for "burglary" under § 924(e).
For these reasons, I would affirm the decision of the Court of Appeals, and I therefore respectfully dissent.

However, because the Shepard documents did not reveal whether Johnson had been found to have touched or struck, we had to determine whether the relatively innocuous phrase-"[a]ctually and intentionally touch[ing]" another person-constituted physical force for purposes of § 924(e)(2)(B)(i). See Johnson, 559 U.S., at 137, 130 S.Ct. 1265.

The remaining case, Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), may also have involved a statute that was not divisible, but the situation is less clear. There, the defendant had several Missouri burglary convictions, and Missouri had several different burglary provisions in effect at the time in question. See id., at 578, n. 1, 110 S.Ct. 2143. The particular provision involved in each of those cases was not certain. Ibid. At least one of those provisions, however, may not have been divisible. That provision, Mo.Rev.Stat. § 560.070 (1969) (repealed), applied not only to buildings but also to "any booth or tent," "any boat or vessel," or a "railroad car." It is not entirely clear whether a Missouri court would have required jurors to agree on a particular choice from this list. In State v. Vandergriff, 403 S.W.2d 579, 581 (Mo.1966), the Missouri Supreme Court held that an information was deficient because it "omitted a description of the type of building that might be burglarized as defined by § 560.070, and thereby omitted an essential element of the offense of burglary in the second degree." Because an information must generally include factual details that go beyond the elements of an offense, see 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 19.3(b), p. 276 (3d ed. 2007) (hereinafter LaFave), it is possible that the Missouri court did not mean to say that the type of building was an element in the sense in which I understand the Court to use the term here.

The board game Clue, to which the Court refers, see ante, at 2290 - 2291, does not provide sound legal guidance. In that game, it matters whether Colonel Mustard bashed in the victim's head with a candlestick, wrench, or lead pipe. But in real life, the colonel would almost certainly not escape conviction simply because the jury was unable to agree on the particular type of blunt instrument that he used to commit the murder.

The Ninth Circuit has held that a court applying the modified categorical approach may rely on a prosecutor's statement as to the factual basis for a guilty plea when that statement is offered on the record in the defendant's presence and the defendant does not object. United States v. Hernandez-Hernandez, 431 F.3d 1212, 1219 (2005). Petitioner has not challenged the Ninth Circuit's rule, and that issue is not within the scope of the question on which we granted certiorari. Accordingly, I would apply it for purposes of this case.

The majority suggests that California law is ambiguous as to this requirement, see ante, at 2291 - 2292, n. 5, but any confusion appears to have arisen after petitioner's 1978 conviction and is therefore irrelevant for purposes of this case. Cf. McNeill v. United States, 563 U.S. ----, ----, 131 S.Ct. 2218, 2219, 180 L.Ed.2d 35 (2011) ("The only way to answer [ACCA's] backward-looking question [whether a previous conviction was for a serious drug offense] is to consult the law that applied at the time of that conviction").