[Crim. No. 3539.   Second Dist., Div. Three.   Mar. 31, 1942.]

THE PEOPLE, Respondent, v. RAYMOND LaMARR et al., Appellants.

Albert Flaxman, Gladys Towles Root and Eugene V. Mc-Pherson for Appellants.

Earl Warren, Attorney General, and Lewis Drucker, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants were charged with the crime of burglary. Each pleaded not guilty and admitted the allegations that he had been convicted twice previously of having committed a felony and that he had served terms in the state prison. Trial by jury was waived. They were adjudged guilty of burglary of the second degree. Defendants appeal from the judgments and the order denying their motions for a new trial.

Appellants claim that the evidence was insufficient to justify the judgments, in that (1) there was no proof of entry, (2) assuming there was entry, it was permissive, and (3) there was no showing that the victim of the alleged burglary was the owner or entitled to possession of the house. This contention is not sustained in any particular.

It is undisputed that the defendants went in a coupe automobile to a single family unlighted dwelling in Los Angeles on August 15, 1941, after dark, about 7:45 p. m., and parked the automobile in the driveway and got out of the automobile; that a three-inch cut was in the screen of the back door parallel with the door hook; that rope and canvas were in the automobile; that a "For Sale" sign was in the front yard; that nothing was found on the persons of the defendants or in their homes.

Other evidence was in substance as follows: Mrs. McDon-

nell, the complaining witness, had resided in the dwelling until August 3, 1941, but did not remove her furniture until August 28, 1941. Mr. McDonnell had not been at the house since July 5, 1941. Between August 3rd, the time when she left the house, and the date of the burglary she returned to the house on three occasions and found that it had been entered and things taken therefrom. On each of such occasions she locked and nailed the doors and windows. On August 14th she observed that her Bendix washing machine was in its usual place on the back porch where it was fastened to a cement slab by bolts, and that some small boys were playing on the porch. On August 16th she observed that the washing machine had been detached from the slab and was in the center of the back porch, having been moved about eight feet.

A neighbor asked the two men who were in the driveway what they were looking for, and they said they were looking for Mr. McDonnell and that they had an appointment to meet him there, and that they were after the washing machine since the instalments were in arrears. The neighbor testified that the automobile was parked at the end of the house facing the rear of the lot.

The neighbor's wife testified on direct examination that she saw one of the defendants come out of the back porch with a flashlight in his hand and that he said he was inspecting the gas and light, and on cross-examination she testified that the man who came out of the back porch with a flashlight "could have been" an officer and that she could not say who that man was. She further testified that one of the men said that the reason that they were so late was that they had come from San Bernardino.

An officer testified that he saw LaMarr in the parkway with a flashlight and that he asked him what he was doing and he said he was looking for the meter, and that he was an employee of the Edison Company; and that soon thereafter, LaMarr said that he was there to see about renting the house for his sister; and that thereafter when Esparza came to the parkway where the officer and LaMarr were, LaMarr said they came there about the washing machine.

Another officer testified that he talked with LaMarr that evening and LaMarr told him that a man by the name of Salcido had sent them out there to pick up the washing machine, and that if the officer would go with him to a certain cafe they might find Salcido; that after searching for Salcido,

LaMarr said that he, himself, was the Salcido they had been looking for. The officer testified further that Esparza said LaMarr asked him to help LaMarr get the washing machine and that he went there for that purpose.

A real estate broker, called as a witness by defendants, said he had had a ''For Sale'' sign up at the premises for a period of about six weeks preceding August 15th; that a woman (the one referred to by LaMarr as his sister) came to his office and wanted to see the inside of the house, and that he told her that she could see the inside only when the owner was there and that the owner was there in the evening occasionally.

The woman referred to as LaMarr's sister testified that LaMarr was her brother; that she had been to the premises on several occasions in the afternoon and evening and knocked at the door and no one answered; that she works at night and she sent the defendants there to see Mr. McDonnell and to make arrangements for her to look the place over.

LaMarr testified that they went there because his sister told them to rent the house or see if the owner would sell it; that they parked the car in the driveway about the middle of the house; that they knocked on the front door, went around to the back, saw the back door open, and were just going to leave when a man (referring to the neighbor) came from the back of the lot and talked to them; that he told the neighbor and the officers that he went there to see about renting or buying the place for his sister; that he did not say that he was from the Edison Company, or that he was looking for the meter, or that he was there to pick up the machine, or that Salcido had sent him; that he did not touch the machine.

Esparza testified in substance the same as LaMarr did, and that he told the officers that he was with Salcido (referring to LaMarr).

The evidence was sufficient to justify the judgments of conviction. The above references to the evidence are adequate to show that it will serve no useful purpose to restate, in the form of an analysis or argument, the various items of evidence which are the basis for this conclusion.

■ As to appellants' contention that there was no entry, there was testimony that, between the time when the owner of the machine was at the house on August 14th and the time when the defendants were apprehended at the house on August 15th, the screen of the back porch door had been cut, the

door unhooked, and the washing machine on the porch had been unbolted from the floor and moved about eight feet. Both defendants participated in making inconsistent statements concerning the reason they were at the house, including a statement that they were there to get the washing machine. Regardless of the view taken relative to the testimony that one of the defendants came out of the porch with a flashlight, the evidence was sufficient to show entry.

The claim of appellants that entry, if any, was permissive is based apparently upon the theory that inasmuch as the real estate broker had told the sister that she could see the inside of the house when the owner was there in the evening, that such a statement was permission to enter the back porch of a stranger's unlighted house in the nighttime and knock upon the kitchen door, and that the sister could delegate such right of entry to defendants. This claim has no merit.

Defendants assert that there was no showing that the victim of the alleged burglary was the owner or entitled to the possession of the house. The house was described in the information as being located at a certain house number on a certain named street in the county of Los Angeles. The defendants were not misled concerning the house to which reference was made. The house was not owned or possessed by defendants or either of them, and they were not entitled to make an issue as to the ownership or possession. (*People* v. *Price* (1904), 143 Cal. 351, 352 [77 Pac. 73]; *People* v. *Redman* (1919), 39 Cal. App. 566, 568 [179 Pac. 725].)

The judgments as to both defendants, and the order denying the motions for a new trial, are affirmed.

Schauer, P. J., and Shinn, J., concurred.