Filed 9/25/15  P. v. Rivera CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072559 |
| v. | (Super. Ct. No. 12F00193) |
| ROGER GABRIEL RIVERA, | |
| Defendant and Appellant. | |

A jury convicted defendant Roger Gabriel Rivera of felony burglary and misdemeanor battery on the mother of his children after he broke through doors to attack the mother in her parents' home.  The trial court sentenced him to nine years in prison.

Defendant now contends (1) the jury was improperly instructed that a person can be convicted of the burglary of his own residence if he did not have an "unconditional possessory right of entry"; (2) there is insufficient evidence to support his burglary conviction; and (3) the California burglary statute violates the federal and state constitutions to the extent it permits a burglary conviction for entry into one's own residence.

We conclude the jury instruction accurately stated the law, substantial evidence

1

supports the burglary conviction, and defendant's constitutional challenge lacks merit. We will affirm the judgment.

BACKGROUND

Defendant and Yazmin lived together off and on for about six and a half years, sometimes at his parents' house, sometimes at her parents' house, and briefly in their own apartment. But for most of the six months prior to the crimes, Yazmin and the couple's two young daughters lived with her parents, and defendant lived with his parents.

Nonetheless, Yazmin's father testified that he knew defendant would be staying with Yazmin and the girls while the father and his wife spent three weeks in Mexico. Defendant kept clothes, shoes and a blanket in the house and returned there each day after work while Yazmin's parents were gone. Yazmin had a key to the house but defendant did not. She left the back door open for him and she sometimes left a key under the doormat. A week before the crimes, Yazmin told defendant to leave. But she let him return after a day or two.

On the day of the crimes, Yazmin was upset because she suspected that defendant had sexual contact with another woman. She confronted him and they fought. At the preliminary hearing, Yazmin testified that defendant choked her, hit her and shoved her against a wall. She said she grabbed a kitchen knife and barricaded herself in a locked bedroom with the children and dialed 911. Defendant broke the bedroom door, entered the bedroom and forcibly took her phone.

At trial, Yazmin was a reluctant witness. When presented with a transcript of her preliminary hearing testimony, she testified that defendant was angry because she told him she cheated on him. She said he pushed her against a wall and slapped the back of her head a few times. After she fell, he hit her body "like two more times." Yazmin said she took a knife from the kitchen to her parents' bedroom, where the couple's daughters were sleeping, locked the door, and barricaded the door with a dresser. While she was dialing 911, the door broke, the dresser slid and defendant started wrestling her for the

2

telephone. Their daughters woke up and started crying. Defendant took Yazmin's phone and left. She locked the doors and called police from the house telephone. Yazmin denied telling police that defendant strangled, punched and kicked her. Photographs of her injuries were admitted into evidence, but she minimized the injuries.

Yazmin testified that after the police left, she again locked the doors and began the process of putting the children to bed. Moments later, Yazmin called 911 once more. In a recording played to the jury, Yazmin told the operator defendant had beaten her up and she and the children were frightened because he was trying to get back into the house. Defendant shattered a sliding glass door and left again when the police returned. One of the police officers who responded to Yazmin's calls that night said he observed bleeding cuts on her lips and cheek and swelling of both eyes. He also authenticated photographs showing significant damage to the bedroom door and the sliding glass door.

The jury found defendant guilty on count one of the lesser included offense of battery on the mother of defendant's children (Pen. Code, § 243, subd. (e)(1)),[1] and on count two of first degree residential burglary (§ 459). Defendant stipulated that he had a prior conviction for felony burglary less than two years earlier and that he had violated the terms of his probation. The trial court sentenced him to four years in prison (two years doubled) for the burglary conviction plus a five-year sentence enhancement under section 667 for the prior conviction. In addition, the trial court imposed a concurrent 120 day jail sentence for the misdemeanor battery conviction.

DISCUSSION

I

Defendant contends the jury was improperly instructed that a person can be convicted of the burglary of his own residence if he did not have an "unconditional

---

[1] Undesignated statutory references are to the Penal Code.

possessory right of entry." He argues that the prosecution should have had to prove defendant entered Yazmin's parents' house without the consent of someone who had a possessory interest in the property superior to his own. Yazmin, he argues, had no greater possessory interest in her parents' home than he did because her rights were equally conditioned on the consent of her parents. Defendant's motions to dismiss before and after the trial were based on the same argument, and before trial commenced, the trial court explicitly found that defendant "never had an unconditional right to enter the structure" but rather had been a temporary guest of the victim.

Defendant did not object to the jury instruction. The failure to object to, or request clarification of, an instruction forfeits a claim of instructional error. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1191-1192.) We address this contention, however, because, under the circumstances, an objection likely would have been futile. (See *People v. Brown* (2003) 31 Cal.4th 518, 553 [no need to make futile objection].) In addition, defendant's substantial rights were arguably affected by the instruction. (See *People v. Gray* (2005) 37 Cal.4th 168, 235 [instructional error affecting substantial rights not forfeited by failure to object].)

The challenged instruction is set out below:

"A person who enters a building or a room within a building with the intent to commit a felony therein is guilty of the crime of burglary even though permission to enter has been extended to him personally or as a member of the public.

"Conversely, a person cannot be convicted of burglary if:

"1. He had an unconditional possessory right to enter as the occupant of that building, or room within that building; or

"2. He was invited in by the occupant who knows of and endorses the felonious intent.

"Thus, a person cannot burglarize his or her own home as long as he or she has an unconditional possessory right of entry.

4

"An unconditional possessory right is the right to exert control over the property to the exclusion of others. Stated differently, it is the right to enter as an occupant of that structure at any time. It is an absolute right to enter that cannot be conditioned on the consent of another.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not have an unconditional possessory right to enter a building, or room within a building. "

Defendant bases his argument against the instruction primarily on *People v. Gauze* (1975) 15 Cal.3d 709 (*Gauze*). In that case, a man argued with a cotenant of his apartment, then left and returned with a gun. (*Id*. at p. 711.) Although the man entered the apartment intending to shoot his roommate, his burglary conviction was overturned. (*Id*. at p. 714.) Examining the history of California's burglary statute, the California Supreme Court concluded that "burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime." (*Id*. at p. 713.) The statute is "aimed at the danger caused by the unauthorized entry itself," including the risk that the intruder will harm the occupants while carrying out the crime or escaping and the risk that the occupants will react violently in anger or panic, inviting more violence. (*Id*. at p. 715.) In contrast, the court observed, the entry of a person into his own home does not similarly engender panic, so burglary should not apply, even if the person had a felonious intent. (*Id*. at pp. 715-716 [noting the absurdity of convicting someone of burglary for walking into his own home intending to forge a check or administer a dose of heroin but changing his mind].) Noting that the gun-toting roommate had an absolute right to enter his own apartment even for a felonious purpose, then, the court in *Gauze* concluded that a "defendant cannot be guilty of burglarizing his own home." (*Id*. at p. 714.)

Defendant argues he merely entered his own home and the jury instruction at issue should not have allowed the jury to find him guilty of burglary unless it also found that

Yazmin's parents had restricted his right of entry or had explicitly delegated the authority to do so to Yazmin. He describes himself as a resident of the house and he describes his property right as a joint tenancy at will, subject only to the consent of Yazmin's parents. He argues that he could not be guilty of burglary because Yazmin's father did not withdraw consent to his tenancy and Yazmin locking him out was merely a "temporary spike" in a series of "mutual domestic spats."

Contrary to defendant's suggestion, the evidence in this case does not establish that defendant had a tenancy at will for the subject property. In addition, we do not consider on appeal allegations of fact and conclusions of law that are not supported by evidence in the record and pertinent legal authority. (Cal. Rules of Court, rule 8.204(1)(C); *In re S.C.* (2006) 138 Cal.App.4th 396, 409.) Accordingly, we reject defendant's unsupported contention that only Yazmin's father (who was out of the country) had the right to exclude him. We also reject the unsupported and conclusory statement in defendant's opening brief that he had unlimited possessory rights to the house because all of his personal possessions were there and he had no other residence.

Burglary is a breach of possessory rights, so a defendant's entry into an occupied structure with the intent to commit a felony inside meets the definition of burglary unless the defendant "(1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by an occupant who knows of and endorses the felonious intent." (*People v. Salemme* (1992) 2 Cal.App.4th 775, 781.) As we have said, the jury instruction quoted this rule and added the caveat from *Gauze, supra,* 15 Cal.3d at p. 714, that a person ordinarily cannot be guilty of burglarizing his own home. The instruction appropriately required the People to prove beyond a reasonable doubt that defendant did not have an "unconditional possessory right to enter as the occupant." Because evidence about defendant's status as a resident of the house was disputed, the jury was properly

6

charged with determining whether or not the prosecution met its burden of proof.[2] (See § 1126 [questions of fact are for the jury].)

Defendant claims the language of the instruction referencing an "unconditional possessory right to enter" was misleading because the People did not prove Yazmin had authority to condition his right to enter the home. But there is also no evidence that Yazmin's father granted defendant an unconditional possessory right to the house. Moreover, although someone ordinarily could not be convicted of burglary for forcibly entering his own home, if there has been estrangement and spousal abuse and there is a victim inside fearing for her safety, a burglary conviction will be upheld. (*People v. Gill* (2008) 159 Cal.App.4th 149, 161.) Even in the face of mixed evidence about whether a defendant was living with his wife when he broke down the door to her apartment, a history of domestic violence together with evidence of the broken door and the wife's later-recanted statements to police were sufficient to uphold a burglary conviction. (*People v. Ulloa* (2009) 180 Cal.App.4th 601, 604-610.) Defendant and Yazmin had a long history of domestic violence and separations and her 911 call reflected genuine and reasonable fear.

The instruction accurately stated the applicable law and allowed the jury to determine the extent of defendant's possessory rights based on the evidence. There was no instructional error.

## II

Defendant also contends there is insufficient evidence to support his burglary conviction.

In assessing the sufficiency of evidence, we review the whole record in the light most favorable to the judgment and apply the substantial evidence standard of review.

---

[2] We discuss the evidence *post* in section II of this opinion.

7

(*People v. Davis* (2009) 46 Cal.4th 539, 606.)  In other words, we look for evidence that is reasonable, credible and of solid value from which a rational juror could find the defendant guilty beyond a reasonable doubt.  (*Ibid.*)  We do not re-weigh the evidence or assess credibility.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  We will reverse a judgment for insufficient evidence only if it appears that upon no theory is there sufficient substantial evidence to support the verdict.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 358.)

Although defendant and Yazmin had lived separately with their respective parents for six months, Yazmin's father allowed defendant to stay in the father's home with Yazmin while the father was away.  Only Yazmin had a key and she controlled access to the home.  Yazmin's father considered defendant a guest.  On the night in question, Yazmin found defendant at a neighbor's house and confronted him angrily as he came out of a bedroom with a girl; when she demanded that he "come home," defendant responded that he did not want to be with her and Yazmin left.  Defendant followed, entering Yazmin's parents' house through the unlocked back sliding glass door and retrieving his cell phone charger from a bathroom.  Yazmin confronted him and told him to take his stuff or she was going to throw it out.  We have already described what happened next.

There was sufficient evidence to support the jury's finding that on the night in question defendant did not have an unconditional possessory right to enter the property.  Regardless of any permission Yazmin's father might have granted earlier, the jury rationally could have concluded that defendant was a guest, not a tenant or resident whose right to be in the house was equivalent to the owners.  In any event, a finding of burglary was supported by evidence that, in order to assault Yazmin, defendant broke down a barricaded bedroom door and later smashed a locked sliding glass door.  (See *People v. Abilez* (2007) 41 Cal.4th 472, 509 [even though victim permitted the defendant, her son, to be in her home, his reentry into her bedroom after they fought and she

8

screamed supported a conviction for burglary as did his breaking into another locked bedroom to steal electronics].)

### III

Defendant further contends the California burglary statute violates the federal and state constitutions to the extent it permits a burglary conviction for entry into one's own residence. He argues he had a reasonable expectation of privacy in Yazmin's parents' home under the Fourth Amendment of the United States Constitution and under article I, section 13 of the California Constitution.

Defendant's argument fails because this case did not involve government intrusion into defendant's private spaces. Defendant acknowledges police had a right to respond to Yazmin's 911 call and to later arrest him for battery, but he claims the burglary conviction somehow violated his "right to be secure in his home." This argument is entirely based on the premise that defendant had an interest in the home sufficient to give him the right to break down its locked doors and assault the owners' daughter, a premise we have concluded the jury properly rejected.

### DISPOSITION

The judgment is affirmed.


                                                    MAURO          , J.


We concur:


      ROBIE          , Acting P. J.


      BUTZ          , J.


9