Filed 10/4/16  P. v. Sanchez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAVIER FRANCISCO SANCHEZ,<br><br>    Defendant and Appellant. | F070581<br><br>(Super. Ct. No. F13907345)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Javier Francisco Sanchez was charged with the murder of his mother. After a preliminary hearing, Sanchez entered pleas of not guilty and not guilty by reason of insanity. A jury trial followed, but Sanchez withdrew his insanity plea after the guilty verdict was read, but before the sanity phase of the trial began. He was sentenced to 40 years to life in prison. He raises three issues on appeal: (1) the trial court erred by refusing to find a prima facie case of discrimination in the prosecution's exercise of peremptory challenges against female prospective jurors; (2) the trial court improperly allowed Sanchez to withdraw his not guilty by reason of insanity plea; and (3) his sentencing enhancement under Penal Code[1] section 12022.53, subdivision (c), must be reversed because it is an included offense of subdivision (d). We affirm.

## STATEMENT OF THE CASE

A complaint was deemed an information following preliminary examination on March 27, 2014. The information charged Sanchez with one count of murder (§ 187, subd. (a)). Enhancements for personal and intentional discharge of a firearm, and personal and intentional discharge of a firearm causing death, were charged under section 12022.53, subdivisions (c) and (d), respectively. On that date, Sanchez entered pleas of not guilty and not guilty by reason of insanity.

On April 11, 2014, the trial court appointed Harold Seymour, Ph.D., and Paula Jean Willis, Ph.D., to perform sanity evaluations pursuant to section 1026. Both found the defendant to be legally insane at the time the offense was committed.

On August 29, 2014, after Seymour and Willis had issued their reports, defense counsel declared a doubt as to Sanchez's competency to stand trial. Criminal proceedings were suspended. The trial court appointed Richard Kendall, Psy.D., and Stephen Pointkowski, Ph.D., to evaluate Sanchez pursuant to section 1368. On

---

[1] All further statutory references are to the Penal Code.

September 15, 2014, Dr. Pointkowski returned his report which found Sanchez was probably malingering in the examination and probably competent to stand trial. Dr. Kendall returned her report on October 6, 2014, finding Sanchez competent to stand trial if maintained on the proper medication. The trial court then found Sanchez competent to stand trial on October 9, 2014, and criminal proceedings resumed.

Jury trial began on October 20, 2014. On October 28, 2014, the jury returned a verdict of guilty of murder with no degree specified, and found true the gun enhancements. After the guilty verdict was read, Sanchez withdrew his plea of not guilty by reason of insanity, against the advice of counsel. The trial court accepted the withdrawal of the insanity plea and set the matter for sentencing.

On December 3, 2014, Sanchez was sentenced to state prison. A term of 15 years to life was imposed for second degree murder and a consecutive sentence of 25 years to life was imposed under section 12022.53, subdivision (d). The sentence under subdivision (c) was stayed pursuant to section 654.

Sanchez timely appealed.

## STATEMENT OF FACTS

Sanchez was living with his mother in her house in Fresno. On August 1, 2013, Sanchez shot his mother four times with a shotgun while she was on her bed, killing her. He then went to a nearby 7-Eleven and told one of the clerks to call 911 because he had just shot his mother. The clerk made the call for Sanchez, and police arrived and arrested him without incident.[2]

---

[2] We provide an abbreviated summary of the facts related to the crime itself because they are not relevant to the claims asserted on appeal.

# DISCUSSION

I.   THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S RULING THAT A PRIMA FACIE CASE OF DISCRIMINATION HAD NOT BEEN SHOWN IN THE PROSECUTION'S EXERCISE OF PEREMPTORY CHALLENGES AGAINST FEMALE PROSPECTIVE JURORS

The prosecutor's first six peremptory challenges were used to strike women. After the prosecutor's sixth challenge, defense counsel made a *Batson/Wheeler*[3] motion. The trial court questioned whether a prima facie case had been shown, and the prosecutor denied any such showing had been established. Defense counsel admitted that two of the women were stricken by the prosecutor for legitimate reasons, but maintained it was less clear why the other four were stricken. The prosecution elected not to comment on his reasons for striking any of the six women.

In assessing the prima facie case, the trial court stated it was going to "look at the following:"

> "The defendant and the challenged jurors are not members of the same class, the case does not seem to the Court to have group overtones, all of the cognizable group members in the panel were not challenged. There are a significant number of women still in the panel .... [¶] … [¶] It's true all of the challenges have been women; however, the Court notes there have been a significant number of women in the panel and there remains, I think, at least seven women still up there. [¶] … [¶]

> "I don't think there's a disproportionate number. The jurors were asked a significant number of questions. There are not people who have been excused that were – did not give what I would call routine answers. In other words, many of them seemed to have reasons why they might have been excused. I do not note any despair [*sic*] at questioning by the prosecution and I do not see any grounds for group bias. And it just seems to the Court that there is no basis for finding a prima facie case, and the Court will not do so."

---

[3]   *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

On appeal, we are tasked with considering whether there was substantial evidence to support the trial court's finding that a prima facie showing of discrimination had not been shown. For the reasons below, we hold that there was substantial evidence to support the court's finding.

A. Standard of Review

De novo review is required in the matter at bar because the determination of a prima facie case presents a legal question. (*People v. Gray* (2005) 37 Cal.4th 168, 187; *People v. Cornell* (2005) 37 Cal.4th 50, 73, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

B. Applicable Law

The state and federal constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias. (*Batson, supra,* 476 U.S. at p. 89; *Wheeler, supra,* 22 Cal.3d at pp. 276-277.) Intentional discrimination of jurors on the basis of gender is prohibited just the same as on the basis of race. (*J.E.B. v. Alabama ex rel. T.B.* (1994) 511 U.S. 127, 129.)

There are three steps to a *Batson/Wheeler* inquiry:

> "First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination." (*People v. Scott* (2015) 61 Cal.4th 363, 383.)

"A prima facie case of racial [or gender] discrimination in the use of peremptory challenges is established if the totality of the relevant facts '"gives rise to an inference of discriminatory purpose."' [Citation.]" (*People v. Scott, supra,* 61 Cal.4th at p. 384.) "When a trial court denies a *Wheeler* motion with a finding that the defendant failed to

5.

establish a prima facie case of purposeful discrimination, we review the record on appeal to determine whether there is substantial evidence to support the ruling. [Citations.] The record includes voir dire. [Citations.] We sustain the ruling when the record discloses grounds upon which the prosecutor properly might have exercised the peremptory challenges against the prospective jurors in question. [Citations.]" (*People v. Griffin* (2004) 33 Cal.4th 536, 555.)

When determining whether a prima facie showing has been made, there are some particularly relevant factors the court may consider, although none of them are dispositive. (*People v. Bonilla* (2007) 41 Cal.4th 313, 342.) These factors include:

> "that a party has struck most or all of the members of the identified group from the venire, that a party has used a disproportionate number of strikes against the group, that the party has failed to engage these jurors in more than desultory voir dire, that the defendant is a member of the identified group, and that the victim is a member of the group to which the majority of the remaining jurors belong." (*People v. Scott, supra,* 61 Cal.4th at p. 384.)

"A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record. [Citations.]" (*Ibid;* accord, *U.S. v. Stephens* (7th Cir. 2005) 421 F.3d 503, 518, 516 ["the examination of 'apparent' reasons in the record ... involves only reasons for the challenges that are objectively evident in the record" such that "there is no longer any suspicion, or inference, of discrimination in those strikes"].) Although it may be telling if the defendant and the challenged juror are of the same class, it is not required that they be. (*Powers v. Ohio* (1991) 499 U.S. 400, 409-410.)

The ultimate burden of persuasion regarding racial or gender motivation rests with the opponent of the strike. (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613.) *Wheeler* further provides that, when a *Batson* issue arises, "it is incumbent upon counsel, however delicate the matter, to make a record sufficient to preserve the point for review." (*Wheeler, supra,* 22 Cal.3d at p. 263.)

C. Analysis

Defense counsel admitted that two of the stricken female jurors, Ms. Krum and Ms. Mannon, were stricken for legitimate reasons. (Defense counsel: "Now, Ms. Krum and Ms. Mannon did say that they were just going to follow the leader basically, so I think it's clear as to them why they were challenged.") However, two others of the challenged six, Ms. Myers and Ms. Ramos, made concerning statements during voir dire that casted doubt on their ability to be fair and reliable jurors in Sanchez's case. Ms. Myers stated that she had a serious issue with the fact that Sanchez's mother was the victim, and also said that she may not be able to function as a juror if she were to see the crime scene photos, which had been previously described to the jury pool as "pretty horrible." Ms. Ramos expressed concerns about having trouble sleeping if she were a juror, given the facts and circumstances of the crime. She also gave answers to questions that indicated she did not care much about the difference between manslaughter and murder:

> "[DEFENSE COUNSEL]: Would you have any tendency to say, well, they [manslaughter and murder] both involve killing - -
>
> "[MS. RAMOS]: Yes.
>
> "[DEFENSE COUNSEL]: - - they are both brutal offenses and therefore, you know, I'm not gonna worry which it is really - -
>
> "[MS. RAMOS]: Yes."

She also stated that she would not feel comfortable making tough decisions like the ones that would be required of a juror in a case like Sanchez's:

> "[PROSECUTOR]: And then we had a couple people yesterday mention that, you know, 'Boy, when it comes to a decision don't - - you know, don't point at me. I don't want to be the one that makes the decision.' Any of the new group of five been in that category? Anybody have any difficulty making this decision?
>
> "[MS. RAMOS]: Me.

7.

"[PROSECUTOR]: Okay. For many of the reasons that we discussed previously?

"[MS. RAMOS]: Yes."

We find that there was substantial evidence to harbor doubt as to Ms. Krum, Ms. Mannon, Ms. Myers, and Ms. Ramos's abilities to reliably serve as jurors in Sanchez's case. That leaves two other unidentified female prospective jurors who were stricken by the prosecution for whom there does not appear to be serious concerns raised in the record. However, there were still possibly dozens in the jury pool, as well as seven women left in the jury box at the time the *Batson/Wheeler* motion was made. The record is silent as to how many women started in the jury box and how many women remained in the jury pool at the time of the motion. It was the defense's responsibility to make a record of these details for purposes of appeal. With a silent record as to numbers and percentages, we have no reason to disturb the trial court's finding that a disproportionate number of female prospective jurors had not been challenged, especially in light of the fact that there was no disparate questioning of jurors. In addition, Sanchez was not a member of the same class as the challenged jurors, but instead it was the victim who was a member of the same class as the challenged jurors.

## II. THE COURT PROPERLY ALLOWED SANCHEZ TO WITHDRAW HIS INSANITY PLEA

Sanchez contends that the trial court abused its discretion and denied appellant due process and the right to counsel by accepting the waiver of his plea of insanity. Specifically, Sanchez argues the trial court had unrecognized discretion to refuse Sanchez's effort to withdraw his insanity plea, and it was a denial of the Sixth Amendment right to counsel to permit the withdrawal of the insanity plea over the objection of defense counsel. He asks this court to reverse and remand for trial of the insanity issue. We will deny Sanchez's claims because they rest on a misunderstanding of law and ignore findings made by the trial court.

8.

A. Background

Near the end of the day on October 27, 2014, the court received a message that the jury had reached a verdict, and the court had the jury return the verdict the following morning. On the morning of October 28, 2014, before the verdict was returned, defense counsel informed the court that Sanchez wished to withdraw his not guilty by reason of insanity plea. The court decided to wait until the verdict was read to give Sanchez another opportunity thereafter to consult with his attorney once he knew what the verdict was. The jury returned a verdict of guilty, and Sanchez was given his chance to further consult with his attorney. After the consultation, Sanchez reiterated his desire to withdraw his insanity plea, against the advice of counsel.

Sanchez was then given the constitutional advisements and waived the right to a sanity phase trial. Sanchez also said he understood the sentencing consequences of his plea withdrawal, specifically that he was almost certainly going to be sentenced to 40 years to life in prison and that he would have the chance to get out of custody much sooner if he were to instead be found not guilty by reason of insanity.

After questioning Sanchez, the court stated that it had:

> "no question … as to the current competence of Mr. Sanchez. I have reviewed the competency evaluations and I have observed Mr. Sanchez's demeanor in court, I've observed Mr. Sanchez as he has had this colloquy with the Court. It appears to me clear that he fully understands the consequences of what he is asking the court to permit him to do. And I don't believe that I have a basis to refuse his request to withdraw his plea."

The court then allowed Sanchez to withdraw his insanity plea, and the matter was set for sentencing.

B. Standard of Review

The case law is clear that the standard of review for a trial court's decision to accept a withdrawal of an insanity plea is abuse of discretion when there are doubts as to the defendant's competency at the time of the withdrawal. (*People v. Merkouris* (1956)

46 Cal.2d 540, 565.) However, the law is not so clear as to the standard of review for a decision to accept a withdrawal of such a plea when there are no doubts that the defendant is competent. In such a case, we hold that it would be an abuse of discretion to not accept the withdrawal.

As to the trial court's finding that Sanchez was competent at the time he withdrew his not guilty by reason of insanity plea: "[A] finding of competence to stand trial 'cannot be disturbed if there is any substantial and credible evidence in the record to support the finding.'" (*People v. Hightower* (1996) 41 Cal.App.4th 1108, 1111.)

C. Applicable Law

"[T]he decision to plead, or to change or withdraw a plea, is a matter lying within the defendant's, rather than the counsel's, ultimate control, regardless of tactical considerations." (*People v. Medina* (1990) 51 Cal.3d 870, 899-900.) A presently competent defendant may withdraw an insanity plea, provided the trial court is satisfied the defendant is making a free and voluntary choice with adequate comprehension of the consequences. (*People v. Gauze* (1975) 15 Cal.3d 709, 717-718.)

D. Analysis

We start with the trial court's finding that Sanchez was competent at the time he requested to withdraw his insanity plea. As previously discussed above, the trial court satisfied itself, by questioning and observing Sanchez, that there was substantial evidence to support a finding he was competent. Sanchez indicated that he understood all of his constitutional rights and the effect a waiver of these rights would have. He further indicated that he understood the probable sentencing consequences of his insanity plea withdrawal. Sanchez has not given us any reason to overrule the trial court's finding that he was competent at the time he withdrew his plea.

We now address whether Sanchez made his withdrawal freely and voluntarily with adequate comprehension of the consequences. Drawing from the same set of facts, the trial court took great care to satisfy itself that Sanchez was aware of the constitutional

10.

rights he was giving up and the sentencing consequences associated with his withdrawal. He indicated that he understood everything the court was asking him, and the court noted that Sanchez had a "stellar" attorney who "carefully advised Mr. Sanchez, [the Court is] sure, with respect to this [decision.]"

Because there is substantial and credible evidence Sanchez was competent at the time he made his motion to withdraw his insanity plea, and made it freely, voluntarily, and intelligently, the trial court properly accepted Sanchez's request to withdraw his plea.

## III. THE TRIAL COURT PROPERLY STAYED THE SECTION 12022.53, SUBDIVISION (c), ENHANCEMENT

Both the section 12022.53, subdivisions (c) and (d), enhancements were found true. Sanchez was sentenced on the greater enhancement for personal and intentional discharge of a firearm causing death, subdivision (d), and the subdivision (c) enhancement for personal and intentional discharge of a firearm, was stayed pursuant to section 654. Sanchez argues that the subdivision (c) enhancement must be reversed because it is an included offense to subdivision (d). We disagree.

A. Applicable Law and Analysis

Section 12022.53, subdivision (f), provides,

> "Only one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment."

In *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1123 (*Gonzalez*), the Supreme Court held that once a trial court has imposed the longest section 12022.53 enhancement, other enhancements under the same section should be imposed and then stayed.

The clear wording of section 12022.53, subdivision (f), and *Gonzalez* are fatal to Sanchez's claim. In his reply brief, Sanchez acknowledges the holding in *Gonzalez* but wishes to preserve the issue for federal review.

The trial court properly stayed the section 12022.53, subdivision (c) enhancement.

11.

## DISPOSITION

The judgment is affirmed.

_____
FRANSON, J.

WE CONCUR:


_____
HILL, P.J.


_____
McCABE, J.*

---

\*     Judge of the Superior Court of Merced County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.